## BALLARD *v.* HUNTER.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 123.   Argued December 7, 1906.—Decided January 14, 1907.

A State may make reasonable discriminations in regard to service of process for enforcement of liens for taxes and assessments on real estate between resident and non-resident owners, providing for personal service on the former and constructive service by publication on the latter.

Land stands accountable to the demands of the State, and owners are charged with knowledge of laws affecting it, and the manner in which those demands may be enforced.

Whether provisions as to notice and service in a state statute have been complied with is wholly for the state court to determine.

Due process of law has never been precisely defined; while its fundamental requirement is opportunity for hearing and defense, the procedure may be adapted to the case, and proceedings in court are not always essential.

_____

[1] For abstract of argument see *ante,* p. 234.

The laws of a State come under the prohibition of the Fourteenth Amendment only when they infringe fundamental rights.

The St. Francis Basin Levee act of Arkansas of 1893 does not deprive nonresident owners of property assessed and sold pursuant to the statute of their property without due process of law or deny such owners the equal protection of the laws.

74 Arkansas, 174, affirmed.

THIS writ of error is prosecuted to review a judgment of the Supreme Court of Arkansas sustaining the validity of a sale of the lands of plaintiffs in error for levee taxes.

The State of Arkansas, by an act of its legislature passed February 15, 1893, created eight counties, or portions of eight counties, which constituted what was known as "St. Francis Basin," a levee district, for the purpose of constructing and maintaining levees against the waters of the Mississippi River, and incorporated a board of directors, giving it power to "levee the St. Francis front in Arkansas and to protect and maintain the same." The board was also authorized, for the purpose of building, repairing and maintaining the levee, to assess and levy annually a tax on all lands within the district, not exceeding five per cent of the increased value or betterment estimated to accrue from the protection given by the levee against floods from the river. The act prescribed that the landowners should determine upon the assessments and levy of the tax in a meeting called for that purpose upon notice by the board, and prescribed the procedure to be observed in the assessment and levy of the tax, and provided that the lands assessed should be entered upon the books, in convenient subdivisions, as surveyed by the United States Government, with appropriate columns showing the names and residences of owners of the lands, and mortgages of record, if any, known to the assessors; and that no error in the description of the lands should invalidate the assessments, if sufficient description was given to ascertain where the land was situated. The assessment was made a lien upon the lands in the nature of a mortgage.

Section 11 of the act was amended in 1895. As amended, it provided that a tax collector should be elected by the board of directors and be furnished a list of assessments for his county; that he should proceed to collect the assessments, and that if the assessments were not paid within thirty days a penalty of twenty-five per cent should at once attach for such delinquency. The board of directors was required to enforce the collection of the taxes by chancery proceedings in a court of the county in which the lands were situated, having chancery jurisdiction, and it was provided that the court should give judgment against the persons claiming to be the owners of the lands, if known to the board, for the amount of such assessments, interests, penalties and costs. It was further provided that if the ownership of any of the delinquent lands should be unknown to the board the lands might be proceeded against "as being owned by unknown owners;" that the judgment should provide for sale of the delinquent land for cash by a commissioner of a court after advertisement as hereafter set out; and, further, that the proceedings and judgment should be in the nature of proceedings *in rem*, and it should be immaterial if the ownership of the lands should be incorrectly alleged; that the judgment should be enforced only against the land and not against any other property. All lands for each of the counties might be included in one suit, and all delinquent owners, including those unknown, might be made defendants, notice of the pendency of the suit to be given as against non-residents of the county and unknown owners respectively by publication weekly, for four weeks prior to the day of the term of court on which final judgment should be entered for the sale of the land, in some newspaper published in the county where the suit might be pending. The form of notice which might be given is inserted in the margin.[1]

---

[1] "St. Francis Levee District ⎱
                *vs.*              ⎰ Notice.
      Delinquent Lands. ⎰

"The following named persons and corporations, and all others having

It was provided that where the owners were unknown that fact should be stated in the published notice, and against any defendant who resided in the county, and whose ownership appeared on the records, notice should be given by the service of personal summons of the court at least twenty days before the day on which the defendant was required to answer, as set out in the summons. And the suit should stand for trial at the first term of the court after the complaint should be filed, if said four weeks in the case of a non-resident or unknown defendant, or twenty days in case of resident defendants, should expire before the first day of the term or during the term of the court to which the suit was brought, unless a continuance be granted for good cause shown, within the discretion of the court, and such continuance for good cause shown might be granted as to part of the land or defendants without affecting the duty of the court to dispose finally of the others as to whom no continuances might be granted. And it was further provided that actual service of summons should be had when the defendant was in the county or when there was an occupant upon the land. In all cases where notice had been properly given and where no answer had been filed, and the cause decided for the plaintiff, the court, by its decree, should grant the relief as prayed in the complaint, and should require the commissioner to sell the lands at the

or claiming an interest in any of the following described lands, are hereby notified that suit is pending in the Circuit Court of —————— County, Arkansas, to enforce the collection of certain levee taxes on the subjoined list of lands, each supposed owner's lands being set opposite his or her or its name, respectively, together with the amounts severally due from each, to wit."

Then shall follow a list of supposed owners, with a descriptive list of said delinquent lands and amounts due thereon, respectively, as aforesaid; and said published notice may conclude in the following form:

"Said persons and corporations, and all others interested in said lands, are hereby notified that they are required by law to appear and make defense to said suit; or the same will be taken for confessed, and judgment final will be entered directing the sale of said lands for the purpose of collecting said delinquent levee taxes, together with the payment of interest, penalty and costs allowed by law."

courthouse door, at public outcry, for cash, after first having advertised such sale weekly for two weeks consecutively, and convey to the purchasers the lands sold, the titles of which should thereupon vest in the purchaser against all persons whomsoever, saving rights to infants and insane persons. The act contained the following:

"Provided, that at any time within three years after the rendition of the final decree of the chancery court herein provided for, the owner of the lands may file his petition in the court rendering the decree, alleging the payment of the taxes on said lands for the year for which they were sold, and upon the establishment of that fact the court shall vacate and shall set aside said decree."

Section 2 of the act of 1895, amending the act of 1893, provided as follows:

"That section 13 of said act be amended so as to read as follows: Said suit shall be conducted in accordance with the practice and proceedings of chancery courts in this State, except as herein otherwise provided, and except that neither attorneys nor guardians *ad litem,* nor any provision of section 5877 of Sandels & Hill's Digest of the Statutes of Arkansas, shall be required, and except that said suits may be disposed of on oral testimony, as in ordinary suits at law; and this law shall be liberally construed to give said assessment lists the effect of *bona fide* mortgages, for a valuable consideration, and a first lien upon said land as against all persons having an interest therein; *Provided,* that no informality or irregularity in holding the meetings or in the description of valuation of the lands, or in the names of the owners or the number of acres therein, shall be a valid defense to such action."

Suit was brought, as provided for in the acts, and, in the complaint, plaintiff in error, A. B. Ballard, was made a defendant and named as a non-resident of Crittenden County, Arkansas. Josephine W. Ballard was not made a defendant. In the list of lands attached to and made part of the complaint the following appears:

Township 4 North, Range 7 East.

West half south east quarter section 32, T. 4 N. R. 7 E. 480 acres, assessed to A. B. Ballard—

Taxes for 1895, $19.20

" " 1896, 19.20

" " 1897, 19.20

West half north east quarter, section 32, T. 4 N. R. 7 E. 80 acres, assessed to A. B. Ballard—

Taxes for 1895, $3.20

" " 1896, 3.20

" " 1897, 3.20

North east quarter section 31, T. 4 N. R. 7 E. 160 acres, assessed to A. B. Ballard—

Taxes for 1895, $6.40

" " 1896, 6.40

A decree in due course passed against defendants. It designated the defendants who were duly served with summons, as shown by the return of the sheriff, and made default, and the defendants who were, as the decree recites, "severally, constructively summoned by publication in the newspaper published in Crittenden County, Arkansas, weekly, for four weeks before this day, proof of which has been previously filed herein, and all of the before named defendants . . . having failed to plead, answer or demur to the complaint of the plaintiff, the court, on motion of the attorney for the plaintiff, awards a decree *pro confesso* as to them in favor of the plaintiff for the amount of taxes, interest, penalty and costs due for their said lands." The court also found and recited the steps preceding the assessment of the taxes, the assessment of the same, and that "all of said taxes on said lands of said defendants are yet wholly unpaid and are delinquent." A lien was declared, and it was considered and adjudged that plaintiff recover from the defendants severally, to be enforced wholly against said lands, the amount of taxes, interest, penalty and costs assessed, levied and extended against the lands belonging to each of said defendants, respectively for

the years 1893, 1894, 1895, 1896 and 1897. A list of the lands was given, in which were the lands assessed against A. B. Ballard (described in the opinion). The lands were decreed to be sold, and it was also decreed that there should be allowed to the commissioner fees as follows:

"For furnishing printer with list of lands to be advertised, five cents per tract, and for attending and making and reporting sale, twenty-five (25) cents per tract; and there shall be allowed to the printer for publishing said notice fifty (50) cents per tract, which fee shall be taxed as costs against each several tract, to be paid by the purchaser or person discharging said lien before sale, and the said commissioner shall report his proceedings hereunder to the next term of this court."

In the report of the commissioner of his proceedings under the decree he showed that he sold the lands in section 31 to A. Hackler and the lands in section 32 to C. W. Hunter, hereafter described.

The sale was approved and the deeds made were also approved.

At September term of the court, 1899, the following order was entered:

"A. B. Ballard and Mrs. Josephine W. Ballard come by their solicitors and on their motion leave is given them to file herein their answer, motion, petition and bill of review herein, and be made parties to this suit with reference to the N. E. ¼ of Section 31, The Southwest ¼ of section 32, and the south ½ of the North west ¼ of section 32, all in township 4 North Range 7 East, and the said pleading is ordered to be filed and they are made defendants and parties to this suit for the purposes set out in said pleadings.

"And thereupon the said C. W. Hunter, by L. P. Berry, Esq., his attorney enters his appearance herein and has ninety days given him within which to plead, answer or demur herein."

It does not appear that A. Hackler or the board of directors of the levee district ever entered their appearance or were made parties to the proceeding.

In compliance with the order, plaintiffs in error filed what is called in the record "Answer to motion of Ballard." It commences as follows:

"To the Hon. E. D. Robertson, Chancellor:

"The answer and motion of A. B. Ballard, who is a citizen of the State of Florida, residing at Tampa, and Mrs. Josephine W. Ballard, who is a citizen of the State of Georgia, residing at Atlanta, also to be taken and considered as a petition, under sections 5839–5843, Sandels & Hill's Digest, and as an original complaint, under sections 4197–4199 of same, and under sections 6120–6124 of same, and the amendments thereto, and as a bill of review under the chancery practice, as appears by the prayer herein."

It then sets out in detail the facts which constitute the basis of the assignment of errors in this court presently given, as well as specifications of errors under the constitution and statutes of the State. It prayed that the paper be considered in the several characters mentioned in its opening paragraph; that all the parties to the original suit be considered parties, including the purchasers at the sale; that the decree of the fourteenth of February, 1898, be "reviewed, reversed and vacated, and that the report of the sales and the sales be set aside and the deeds cancelled."

The case was submitted on a statement of facts, by which it was agreed that plaintiffs in error were the owners of the land on the twenty-first day of December, 1897, and that their title appeared of record. That at that date they were, and continued to be, respectively, citizens of Florida and of Georgia, and that they would testify that they had no knowledge of the suit or its pendency, or that taxes for levee purposes had been levied prior to the date of the sale of their lands and the purchase thereof by Hunter or Hackler, or "that any law on that subject had been enacted." That the clerk of the court was allowed one dollar for each of the deeds made in pursuance of the sale, and allowed the fees set out in the decree, and all said sums were taxed as costs and paid

out of the proceeds of sale. That plaintiff in error made the tenders to Hunter and Hackler, respectively, as stated in "their answer and motion filed herein on the 25th day of September, 1899, and in the manner and at the time stated, and that the said C..W. Hunter and A. Hackler, respectively, refused to receive such tenders and severally refused to state the amounts that they claimed they were entitled to receive in order to redeem the said tracts of land respectively."

· It was also agreed that the record of the suit, including all orders, returns of officers, minutes of proceedings, etc., should be read in evidence, subject only to objections for irrelevancy and incompetency.

The decree of the court, after reciting the submission of the case and upon what submitted, concluded as follows: "The court orders that all the relief as prayed for in the said answer, motion, petition and original complaint of the said A. B. Ballard and Josephine W. Ballard be and the same is hereby denied and refused, and that the said answer, motion, petition and original complaint be and the same is hereby dismissed."

The Supreme Court of the State affirmed the decree.

The errors assigned are that the Supreme Court erred in not decreeing that (1) The lands of plaintiffs in error were not properly described in the complaint. (2) and (3) In not decreeing that the sale was unlawfully made, for the reason that the lands of plaintiffs in error were sold as a whole and for taxes on the whole west one-half of section 32, when plaintiffs in error did not own or claim the N. ½ of the N. W. ¼ of that section. (4) The decree was void because the lands were sold for sums not legally chargeable thereon. (5) That the acts of 1893 and 1895 required a notice to be given to the owners of the lands proceeded against in the suit they provided for, and no such notice was given, and the sales were therefore unauthorized and void. (6) The notice provided for by the act, assuming notice was given, was insufficient. It was not such a notice of the pendency of the suit as the act or the general law required to be given to the owners of lands resident in

the State of Arkansas and Crittenden County, where the lands were located, and to persons owning lands there similarly circumstanced and subject to the same taxation, or persons having tenants on such lands. All such persons were entitled by said act and had personal service for at least twenty days before the rendition of the decree of sale. Plaintiffs in error, respectively citizens of Georgia and Florida, were allowed and given constructive service, if any were given, only by publication in a newspaper, published in Crittenden County, and only weekly for four weeks, the first notice being, and required to be, only four weeks before the rendition of the decree. Plaintiffs in error had no personal or other notice of the suit, and did not appear therein. They were denied thereby the privileges and immunities of citizens of the United States and of Arkansas, and denied the equal protection of the laws within the State of Arkansas, and deprived of their property without due process of law, in violation of the Constitution of the United States, and the decree of sale and sales thereunder are void. (8) In not decreeing that the sales of the land of the plaintiffs in error were void and passed no title, because in the suit the laws of the State were violated in that (a) the complaint was deficient; (b) there was no sufficient affidavit made and filed to support a warning order or order for notice to plaintiffs in error; (c) there was no sufficient proof of publication of a warning order or notice filed or produced in court when decree of sale was made; (d) the decree of sale did not state, and the record did not show, the facts essential to the validity of the decree of sale as against plaintiffs in error or other lands. Thereby the plaintiffs in error, in violation of the Constitution of the United States, have been denied the benefit of such laws in this suit. (9) The decree of sale was rendered in violation of the laws of Arkansas requiring proof of evidence to support the allegations of the plaintiff as against plaintiffs in error, persons before the court only by a constructive service of process. And the decree was pronounced as based on an alleged order or decree *pro*

*confesso* entered in the suit, not authorized by law, and so was rendered without due process of law, in violation of the Constitution of the United States.

*Mr. William M. Randolph,* with whom *Mr. George Randolph* and *Mr. Wassell Randolph* were on the brief, for plaintiffs in error:

The titles claimed by the purchasers—defendants in error—to the lands in controversy, which it is conceded belonged to plaintiffs in error, but for their purchases, depend entirely on a strict compliance with the statutes referred to, Act No. 19 of the year 1893, and Act No. 71 of the year 1895, in the assessment, the levy of the taxes, and the conduct of the suit, and cannot be maintained, except by showing affirmatively, not only a substantial compliance with their requirements, but an exact compliance, from the inception of the undertaking to have the levee taxes voted by the landowners, until the conclusion of the sales under the decrees in the suit, authorized to be brought, to enforce the collection of them.

Compliance with the requirements of these statutes is essential to the validity of sales for ordinary taxes.

The courts treat them as mandatory. Blackwell on Tax Titles, 2d. ed., Ch. 5. p. 106; Black on Tax Titles, 1st ed., Ch. 3, §§ 27, 34; *Martin* v. *Allard,* 55 Arkansas, 218; *Cooper* v. *Freeman Lumber Co.,* 61 Arkansas, 42 *et seq.; Logan* v. *Land Co.,* 68 Arkansas, 248; *Hunt* v. *Gardner,* 74 Arkansas, 583; *Bonner* v. *Directors of St. Francis Levee District,* 92 S. W. Rep. 1124; *Martin* v. *Barbour,* 34 Fed. Rep. 701; *S. C.,* 140 U. S. 634; *Gregory* v. *Bartlett,* 55 Arkansas, 30; *Taylor* v. *The State,* 65 Arkansas, 595; *French* v. *Edwards,* 13 Wall. 511, *Lyon* v. *Alley,* 130 U. S. 184; Cooley on Taxation, 1st ed., Ch. 12, p. 258; *Gaines* v. *Stiles,* 14 Pet. 322, 331; *Redfork Levee District* v. *St. L., I. M. & S. Ry. Co.* (Ark.), 96 S. W. Rep. 117.

There was no authority in the statutes for combining in one suit the levee taxes for more than one year. When in the same suit the levee taxes for 1894, 1895, 1896 and 1897

were sued for, definite and distinct allegations as to the assessments and levies, for each year, and the efforts to collect, and the delinquencies, and the facts authorizing the suits, should have been made. The loose and imperfect statements made in the complaint were not what the law requires. *Redfork Levee District* v. *St. L., I. M. & S. Ry. Co.* (Ark.), 96 S. W. Rep. 117.

The acts of the General Assembly, under which the suit was brought, required a notice to be given to the owners of the lands, of the suit, and no notice having been given plaintiffs in error, the decree of sale, and the sale of their lands, for want of such notice, were void.

Act No. 19 of the year 1893 and Act No. 71 of the year 1895 in question here do not provide for any proceeding strictly *in rem*. *Wilson* v. *Gaylord*, 92 S. W. Rep. 26; *S. C.*, 4 Ark. Law Rep. 341.

The provisions of the statutes, Acts of 1893, No. 19, and 1895, No. 71, and all the others on the same subject, as to the method of procedure and notice, and other like matters, are mandatory, and must be shown in this suit to have been observed technically and literally, as well as substantially, as a condition precedent to the attachment of the lien on the lands of plaintiffs in error, and the other lands assessed, and to the power to decree a sale of such lands for the payment of the levee taxes sued for, and to the right to have the lands sold for the taxes, and if the requirements of the statutes have not been so observed, the sales of the lands of plaintiff in error are, for that reason alone, void. *Patrick* v. *Davis*, 15 Arkansas, 370; *Wiley* v. *Flournoy*, 30 Arkansas, 612; *Matter of Cornelius*, 14 Arkansas, 682; *Abraham* v. *Wilkins*, 17 Arkansas, 319; *Rector* v. *Board of Improvement*, 50 Arkansas, 116; *Watkins* v. *Griffith*, 59 Arkansas, 344; *Torrey* v. *Millbury*, 21 Pickering, 640; *Sandwich* v. *Fish*, 2 Gray (Mass.), 298; *Clark* v. *Crane*, 5 Michigan, 154; *French* v. *Edwards*, 13 Wall. 506, 511; *Lyon* v. *Alley*, 130 U. S. 178, 184; *Gregory* v. *Bartlett*, 55 Arkansas, 30.

*Mr. L. P. Berry,* for defendants in error, submitted:

A judicial sale of lands for illegal taxes, penalty, interest and costs is not a taking of property without due process of law. *Burcham* v. *Terry,* 55 Arkansas, 398; *Doyle* v. *Martin,* 55 Arkansas, 37; *Kelly* v. *Laconia Levee District,* 74 Arkansas, 202; 85 S. W. Rep. 249; *Minneapolis &c.* v. *Debenture Co.,* 81 Minnesota, 66.

Due process of law does not require that the true owner of land be named in a judicial proceeding for the collection of delinquent taxes where the land is described in a public notice directed to an alleged owner and all others interested therein. *Iowa Central Ry. Co.* v. *Iowa,* 160 U. S. 389; *Davidson* v. *New Orleans,* 96 U. S. 97; *Tyler* v. *Judges,* 175 Massachusetts, 71.

The four weeks' notice, provided by the levee act, by publication to unknown owners and owners of lands who are non-residents of the county in which suit is brought, is not so unreasonable as to amount to a taking of property without due process of law, nor does it abridge the privileges or immunities of citizens of the United States, nor does it discriminate against citizens of other States, nor does it amount to a denial of the equal protection of the laws to persons within the jurisdiction of the court. *Arndt* v. *Griggs,* 134 U. S. 316; *Bellingham Bay* v. *New Whatcom,* 172 U. S. 314; *Davidson* v. *New Orleans,* 96 U. S. 97; *Tyler* v. *Judges,* 175 Massachusetts, 71; *Hager* v. *Reclamation District,* 111 U. S. 701; *Wurtz* v. *Hoagland,* 114 U. S. 606; *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112; *Bauman* v. *Ross,* 167 U. S. 548; *Hanover Nat'l Bank* v. *Moyses,* 186 U. S. 181, 192; *Manson* v. *Duncanson,* 166 U. S. 533; *Johnson* v. *Hunter,* 127 Fed. Rep. 222; *Huling* v. *Kaw Valley Ry.,* 130 U. S. 559–563.

The levee act is not a private act, but a public act, operating over a limited territory, of which plaintiffs in error were bound to take notice, and proceedings had under this levee act constitute due process of law. *Huling* v. *Kaw Valley Ry.,* 130 U. S. 559–563; *Johnson* v. *Hunter,* 127 Fed. Rep. 222.

An erroneous construction by a state court of matters

of practice under a state statute, where the statute as construed by the court provided for notice and an opportunity to be heard, is not a deprivation of property without due process of law. *West* v. *Louisiana*, 194 U. S. 263; *Thorington* v. *Montgomery*, 147 U. S. 492; *In re King*, 46 Fed. Rep. 911.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

The assignments of error present the contention that plaintiffs in error have been deprived of their property without due process of law. One of them urges, in addition, the clauses of the Fourteenth Amendment, which prohibit a State from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States, and from depriving any person within her jurisdiction of the equal protection of the laws. Plaintiffs in error invoke those provisions against the statutes of Arkansas, because of the different manner and time of service of summons of the suit authorized by said statutes to enforce the payment of the levee taxes. It is contended that, by requiring personal service of summons upon resident owners or occupants of lands for at least twenty days before the rendition of the decree of sale, and providing for constructive service by publication upon non-resident owners of only four weeks, a discrimination is made between owners of lands, and that non-resident owners are thereby denied the rights secured to them by the Constitution of the United States. We have no doubt of the power of the State to so discriminate, nor do we think extended discussion is necessary. Personal service upon non-residents is not always within the State's power. Its process is limited by its boundaries. Constructive service is at times a necessary resource. The land stands accountable to the demands of the State, and the owners are charged with the laws affecting it and the manner by which those demands may be enforced. *Huling* v. *Kaw Valley Railroad*, 130 U..S. 559. This accountability

of the land and the knowledge the owners must be presumed to have had of the laws affecting it is an answer to the contention of the insufficiency of the service. Certainly it was not so insufficient that it can be said that a difference in the time allowed for such service was not the equivalent of that allowed to resident owners. Mixed with the contention is a charge that the notice to non-residents did not comply with the act of 1893, or the general law of the State, but this is decided against plaintiffs in error by the Supreme Court of the State, and we accept its ruling.

In passing upon the other contentions of plaintiffs in error we are brought to the consideration of what is due process of law. A precise definition has never been attempted. It does not always mean proceedings in court. *Murray's Lessee* v. *Hoboken,* 18 How. 272; *McMillen* v. *Anderson,* 95 U. S. 37. Its fundamental requirement is an opportunity for a hearing and defense, but no fixed procedure is demanded. The process or proceedings may be adapted to the nature of the case. *Dent* v. *West Virginia,* 129 U. S. 114; *Lent* v. *Tillson,* 140 U. S. 316; *Hagar* v. *Reclamation District,* 111 U. S. 701; *Iowa Central R. R. Co.* v. *Iowa,* 160 U. S. 389.

In *Davidson* v. *New Orleans,* 96 U. S. 97, a proposition was laid down which has since been quoted many times. The court said, at pages 104 and 105: "That whenever, by the laws of a State or by state authority, a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings can not be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." And Mr. Justice Bradley, in a concurring opinion, said, on pages 107 and 108, "that, in judging what is 'due process of

law,' respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain or the power of assessment for local improvement, or none of these; and if found to be suitable or admissible in the special case it will be adjudged to be 'due process of law,' but if found to be arbitrary, oppressive and unjust it may be declared to be not 'due process of law.' Such an examination may be made without interfering with that large discretion which every legislative power has of making wide modifications in the forms of procedure in each case, according as the laws, habits, customs and preferences of the people of the particular State may require." See also *Marchant* v. *Pennsylvania R. R. Co.,* 153 U. S. 380, and *Holden* v. *Hardy,* 169 U. S. 366.

In *Castillo* v. *McConnico,* 168 U. S. 674, prior decisions defining due process of law were applied to a law assessing taxes. The case involved the validity of a title derived from a tax sale made to enforce delinquent state taxes. The title thus acquired was assailed on the ground that the assessment upon which it was based was void because the property was not assessed in the name of its owner. The state law made the deed given in pursuance of the sale *prima facie* evidence of the fact that the property was subject to taxation and the fact that the taxes had not been paid, and conclusive evidence that the property had been assessed, the taxes levied and the property advertised according to law; also that the property was adjudicated and sold, as stated in the deed, and all the prerequisites of the law were complied with from the assessment, up to and including the execution and registry of the deed. The state court sustained the sale. This court, in passing upon the contention that the assessment and sale constituted a taking of property without due process of law, went behind the presumptions created by the deed, considered the alleged defects in the assessment and the advertisement and decided that a notice of thirty days by publication was due process of law. The court also decided that, although the statutes under which the assessment was made provided

for the placing of the name of the owner on the assessment roll, where such name was known, they also provided that the property assessed should be described in the assessment roll; and, therefore, that the notice required by the statute was not addressed to each person assessed, but to all persons having property subject to taxation. It was held that the statute afforded both constructive and actual notice. "It can not be doubted," it was said at page 681, "that, in the exercise of its taxing power, the State of Louisiana could have directed that the property subject to its taxing authority should be assessed without any reference whatever to the name of the owner, that is to say, by any such description and method as would have been legally adequate to convey either actual or constructive notice to the owner. As said in *Witherspoon* v. *Duncan*, 4 Wall. 210, 217: 'It is not the province of this court to interfere with the policy of the revenue laws of the States, nor with the interpretation given to them by their courts. Arkansas has the right to determine the manner of levying and collecting taxes, and can declare that the particular tract of land shall be chargeable with the taxes, no matter who is the owner or in whose name it is assessed and advertised, and that an erroneous assessment does not vitiate a sale for taxes.'" See also *Tupin* v. *Lemon*, 187 U. S. 51, and *Leigh* v. *Green*, 193 U. S. 79.

In view of these principles let us examine the contentions of the plaintiffs in error.

First. They charge that there is an incorrect description of the lands owned by plaintiffs in error in the original complaint and decree, in that they did not own all the lands described or sold. In the original transcript of the record there were apparently discrepancies between the lands assessed and those described in the decree. These discrepancies have been corrected by the return to a certiorari granted for that purpose, and it appears that the lands assessed and those decreed to be sold in section 32, T. 4 N., R. 7 E., were the W. ½ and S. E. ¼, 480 acres, W. ½ of N. E. ¼, 80 acres. Plaintiffs

in error, however, allege that they owned only the S. W. ¼ and the S. ½ of the N. W. ¼, and contend that the two tracts owned by them made up 240 acres, and the two tracts sold by the commissioner and conveyed to Hunter, embracing such 240 acres, made 480 acres. Thus, it is urged, the lands plaintiffs in error owned were sold to pay the levee taxes on land they did not own, and their lands were thereby taken without due process of law.

This point was made in the complaint attacking the decree and sale, but was not passed on by the Supreme Court. Presumably the court regarded the point as precluded by the original decree and not a ground upon which the decree could be attacked, and this is our view. What lands were properly assessed to Ballard and what lands he owned were facts to be alleged in the original suit and established by the proof there introduced or by admission through the default of the owners of the lands. If there was error it can not be a ground for setting aside the decree if the court had acquired jurisdiction to render the decree. Error or irregularities in the suit does not take from it or its decree the attribute of due process. *Central Land Company* v. *Laidley*, 159 U. S. 103; *Iowa Central R. R. Co.* v. *Iowa, supra*. It is only with this aspect of the suit and decree with which we are concerned. No defense, therefore, which could have been made or rights which could have been taken care of in the suit can now be set up to impugn its decree.

The statutes of the State, under which the taxes were levied, virtually make the land a party to the suit to collect the taxes. It is from the lands alone, and not from their owner, that the taxes are to be satisfied, and each acre bears its part. The burden of taxation could have been easily and definitely assigned by the court. Mistakes in ascribing the ownership of the lands did not increase the taxation or cast that which should have been paid by one tract of land upon another tract. In *Doyle* v. *Martin*, 55 Arkansas, 37, it was held that it is no valid objection to a tax proceeding against land

owned by one person that it was described, not separately but as a portion of a larger tract owned by a different person. See also *Minneapolis Ry. T. Co.* v. *Minnesota D. Co.*, 81 Minnesota, 66.

Second. The fourth error assigned is that the lands were sold for sums not legally chargeable thereon. The illegal charges alleged are fees to the commissioner for furnishing the printer with a list of lands sold—fees to the commissioner for reporting the sale and to the printer for publishing notice of sale. The comment we have made above applies to this assignment of error. The act under which the suit was brought provided that notice to those interested in the delinquent lands proceeded against should specify, among other things, that a final judgment would be entered, "directing the sale of lands for the purpose of collecting said delinquent levee taxes, together with the payment of interest, penalty and costs allowed by law." It was for the court to determine, therefore, what costs were allowed by law, and an erroneous judgment of what the law allowed did not deprive the defendants in the suit of their property without due process of law. The Supreme Court, in passing on this objection, said: "A decree of a court of competent jurisdiction is not subject to a collateral attack because lands were sold thereunder for illegal penalties and costs. *Harry E. Kelley* v. *Laconia Levee District*, MSS. Opinions; *Johnson* v. *Hunter*, *supra*." And this decision is an answer to the other decisions of Arkansas cited by plaintiffs in error, to the effect that a sale for taxes, in excess of the amount due or embracing costs not legally due, is void. And the case at bar is also distinguishable from the cases cited from this court.[1]

Third. The fifth assignment of error is based on the contention that the Supreme Court of the State erred in not

---

[1] *French* v. *Edwards*, 13 Wall. 506, 514; *Walker* v. *Turner*, 9 Wheat. 541; *Moore* v. *Brown*, 11 How. 414; *Woods* v. *Freeman*, 1 Wall. 398; *McClung* v. *Ross*, 5 Wheat. 116; *Thatcher* v. *Powell*, 6 Wheat. 119; *Gage* v. *Pumpelly*, 115 U. S. 454; *Dick* v. *Foraker*, 155 U. S. 404.

deciding that plaintiffs in error were not given the notice required by the statutes of the State. This assignment of error is elaborately argued by counsel, but the distinction. is not clearly made between the construction of the statutes and their effect as construed. What the statute required was for the Supreme Court to determine; whether, as determined, it constituted due process is for us to decide. The case at bar does not come within *Huntington* v. *Attrill*, 146 U. S. 651, or *Scott* v. *McNeal*, 154 U. S. 34, or the cases where the statute of a State was assailed as impairing the obligation of a contract. We come then to what was done in the suit which decreed the sale, and the discussion answers as well for the other assignments of error without specially enumerating them. The ultimate ground of all of them is that the proceedings were conducted without the notice to plaintiffs in error required by the demands of due process of law. In discussing the contention of plaintiffs in error, that they had been denied the equal protection of the laws by the different manner of service upon resident and non-resident owners of land, and the different times for appearance after service, we declared that it was competent for the State to make the distinction, and that the notice and time were adequate to give to plaintiffs in error the equal protection of the laws. They were also adequate to afford due process of law. And we will pass to the consideration of the other objections. The most important are the following: That there was no sufficient affidavit made and filed to support a warning order or order for notice to plaintiffs in error, and there was no proof of such order or notice filed or produced in court when the decree was rendered. Replying to these objections, the Supreme Court said:

"3. The act provides that notice by publication shall be given to the defendants in suits instituted for the collection of levee taxes, who are non-residents of the county where the suits are brought. The plaintiff in the complaint in the proceedings attacked in this suit stated who of the defendants

therein were non-residents of the county in which the proceedings were pending; and such complaint was sworn to. This was sufficient to authorize notice, by publication, without a separate affidavit to the same effect. It was held in *Sannoner* v. *Jacobson*, 47 Arkansas, 31, that an affidavit and complaint may be included in one instrument of writing, if it contains all the essentials of both. The complaint in the proceedings attacked contained the essentials of the affidavit and is sufficient to answer the same purpose. *Johnson* v. *Hunter, supra.*

"The act under which the aforesaid proceedings were instituted does not require a warning order to be entered on record, or the complaint; and if it had the proceedings could not be attacked collaterally, unless such entry was made jurisdictional, as it was in *Gregory* v. *Bartlett*, 55 Arkansas, 30, and it was not in this case. *Clay* v. *Bilby*, 78 S. W. Rep. 749."

The court held, therefore, that, under the laws of the State, an "affidavit and complaint may be included in one instrument of writing, if it contains all the essentials of both." And it was held that the complaint in the proceedings attacked did contain those essentials. If we could dispute with the Supreme Court at all upon the requirements of the laws of the State it would have to be on a clearer showing of error than is made in the case at bar. The statute provides that all or any part of the delinquent lands for a county may be included in the suit instituted in such county, and there may be included in the suit known and unknown owners; "and notice of the pendency of such suit shall be given as against non-residents owners of the county and unknown owners, respectively," by publication weekly. The time of publication is specified. The complaint showed that Ballard was the owner of the lands and that he was a non-resident of the county. It is said, however, that Josephine Ballard was not made a defendant in the suit, though the records of the county showed that she was an owner thereof. But the statute provided against

such an omission. It provided that the proceedings and
judgment should be in the nature of proceedings *in rem,* and
that it should be immaterial that the ownership of the lands
might be incorrectly alleged in the proceedings. We see no
want of due process in that requirement, or what was done
under it. It is manifest that any criticism of either is an-
swered by the cases we have cited. The proceedings were
appropriate to the nature of the case.

It should be kept in mind that the laws of a State come
under the prohibition of the Fourteenth Amendment only
when they infringe fundamental rights. A law must be framed
and judged of in consideration of the practical affairs of man.
The law can not give personal notice of its provisions or pro-
ceedings to every one. It charges every one with knowledge
of its provisions; of its proceedings it must, at times, adopt
some form of indirect notice, and indirect notice is usually
efficient notice when the proceedings affect real estate. Of
what concerns or may concern their real estate men usually
keep informed, and on that probability the law may frame
its proceedings; indeed, must frame them, and assume the
care of property to be universal, if it would give efficiency to
many of its exercises. This was pointed out in *Huling* v. *Kaw
Valley Railway & Improvement Company,* 130 U. S. 559, where
it was declared to be the "duty of the owner of real estate,
who is a non-resident, to take measures that in some way he
shall be represented when his property is called into requisition;
and if he fails to get notice by the ordinary publications which
have been usually required in such cases, it is his misfortune,
and he must abide the consequences." It makes no difference,
therefore, that plaintiffs in error did not have personal notice
of the suit to collect the taxes on their lands or that taxes had
been levied, or knowledge of the law under which the taxes
had been levied.

Our attention is directed to the case of *Johnson* v. *Hunter,*
decided by the Circuit Court of Appeals for the Eighth Circuit,
147 Fed. Rep. 133, to establish that the verified complaint

in the suit to collect the levee taxes was not sufficient to sustain the service by publication. The appellants in that case were complainants in the Circuit Court in a suit to quiet their title against sales under decrees made in suits prosecuted by the St. Francis Levee District—suits identical with that with which the case at bar is concerned. The court held that an affidavit, "adapted to the terms of the levee act," and placed on record in the suit, was a prerequisite to the issuance and publication of the prescribed warning order, and was strictly jurisdictional. A number of cases were cited. Considering the terms of the levee act, the court quoted the following provisions of section 11 as amended February 15, 1893: "And provided further, actual notice of summons shall be had where the defendant is in the county or where there is an occupant upon the land." "The conditions are," the court said, "that the defendant must be a non-resident of the county, and must be absent therefrom, and that there must not be an occupant upon the land. If the defendant be a resident of the county, or be present therein, or if there be an occupant upon the land, actual service of a summons is required. . . . And a defendant may be a non-resident of the county and absent therefrom and yet the land be occupied by a tenant or other representative upon whom a summons can be served. If the land is so occupied, the act plainly calls for such service. *Banks* v. *St. Francis Levee District*, 66 Arkansas, 490, 51 S. W. Rep. 830." The court assented to the view that a complaint, properly verified, containing what was required to be set forth, would be a sufficient affidavit to sustain service by publication, but observed, "that of the three concurring conditions, without the existence of each that mode of service was not permissible, the complaints alleged the existence of one, and were altogether silent in respect to the other two, that is, that Johnson (the defendant) was a non-resident of the county, but did not state that he was not present therein or that there was not an occupant on the lands."

Referring to the case of *Memphis Land & Timber Co.* v. *St. Francis Levee District*, 70 Arkansas, 409, and the decision of the Supreme Court of the State in the case at bar, it was said: "In one the question actually considered was whether or not an affidavit for publication was necessary, rather than what it should contain, and in the other it was whether or not any affidavit and verified complaint could perform the office of such an affidavit; but in neither does the court's attention appear to have been directed to the provision, 'and provided further, actual service of summons shall be had where the defendant is in the county or where there is an occupant upon the land.' In the arrangement of the act this provision is somewhat separated from the others which it is obviously designed to modify and restrain, and, in the absence of any controversy respecting it, it may well be that it was not observed by the court." We can not concur in the supposition. We think those cases can be better explained by a different supposition. In the case at bar plaintiffs in error are not in a position to make the objection. They do not assert that, though non-residents of the county, they were present therein or that their lands were occupied by a tenant or other representatives, as was the case in *Banks* v. *St. Francis Levee District*, 66 Arkansas, 490. They on the contrary assert, and make it a ground of relief under the Constitution of the United States, that as non-residents they were discriminated against, in that the acts of 1895 did not require the same notice to be given to non-resident owners as to resident owners or to persons owning and having tenants upon the land.

Plaintiffs in error, it is true, alleged that no "sufficient affidavit of the plaintiff" was filed "stating positively or sufficiently any one of the facts" required to be stated, and that the clerk did not make on the complaint or otherwise any warning order to plaintiffs in error, or to either of them, to appear in the suit as required, or which obliged them to appear therein or bound them by the proceedings which were had therein. But there was no allegation that either of them

was in the county or that there was an occupant upon their lands. Not being defendants who were entitled to personal service, they can not urge against the decree that they were not given personal service or complain that the complaint was insufficient as an affidavit for service by publication, because it did not deny the existence of conditions which there is no pretense existed.

Another assignment of error is that "there was no sufficient proof of the publication of any warning order, or any notice to the plaintiffs in error, filed or produced in court when the decree of sale of their lands was rendered." To this contention the Supreme Court replied: "The act under which the aforesaid proceedings were instituted does not require a warning order to be entered on record or the complaint, and if it had the proceedings could not be attacked collaterally, unless such entry was made jurisdictional, as it was in *Gregory* v. *Bartlett,* 55 Arkansas, 30, and it was not in this case. *Clay* v. *Bilby,* 78 S. W. Rep. 749." And the decree recites that the defendants "were severally constructively summoned by publication, . . . proof of which has been previously filed herein." The contention of plaintiffs in error is therefore answered by *Grignon's Lessee* v. *Astor,* 2 How. 318, 319; *Sargeant* v. *The State Bank of Indiana,* 12 How. 371; *Voorhees* v. *The Bank of United States,* 10 Pet. 449; *Applegate* v. *Lexington &c. Mining Co.,* 117 U. S. 255.

The other assignments of error do not require specific mention. They are either answered by that which we have already said or do not involve jurisdictional questions.

*Decree affirmed.*

MR. JUSTICE BREWER concurs in the judgment.