DOW v STATE OF MICHIGAN

Opinion of the Court

1. Taxation—Constitutional Law—Due Process—Notice—Publication.

Notice of an action to determine a real estate tax delinquency and impending foreclosure for nonpayment of delinquent taxes given by publication alone does not constitute a violation of the due process requirements of the Constitution of the United States.

2. Taxation—Constitutional Law—Notice—Due Process.

Notice by mail in actions to determine real estate tax delinquencies and to foreclose for nonpayment of delinquent taxes is neither a procedural requirement necessary for jurisdiction nor is it required by due process under the state constitution because the purpose of giving notice in addition to publication is merely to warn the taxpayer of the impending tax sale and to induce him to make prompt payment of the taxes due; the statutory provision for notice by mail is for the benefit of the state and not for the benefit of the individual taxpayer and failure to comply with the statute may not be objected to by the taxpayer.

3. Taxation—Notice.

Requirements of notice in actions for tax sales and foreclosures where the proceedings involve the regular annual property tax which the owners must anticipate and pay, knowing the consequences of default, can be more relaxed than in proceedings which could not have been anticipated by interested parties.

References for Points in Headnotes

[1–3, 7, 9] 51 Am Jur, Taxation § 1033 *et seq.*
[2, 9] 51 Am Jur, Taxation § 731.
[4] 51 Am Jur, Taxation § 1116 *et seq.*
[5] 51 Am Jur, Taxation §§ 1067, 1073.
[6] No reference.
[8] 62 Am Jur 2d, Process § 40.

4. TAXATION—STATUTES—REDEMPTION—NOTICE.

The statutory language is clear to the effect that failure to give notice of redemptive rights does not invalidate real estate tax foreclosure and sale proceedings taken under the Auditor General's petition, and, unless the land is redeemed before the expiration of the redemption period, absolute title vests in the state (MCLA 211.67, 211.73c).

5. TAXATION—REDEMPTION—TITLE IN STATE.

After title to tax-delinquent lands becomes absolute in the state, neither the Auditor General nor the county treasurer has authority to accept the defaulted taxes, with interest and penalties thereon, and thereupon release or nullify the state's title to the property, and the State Treasurer must convey the land to the state by deed (MCLA 211.67a).

6. TAXATION—QUIETING TITLE—STATUTES.

In an action to set aside a sale of real property for delinquent taxes it was proper for the trial court to grant summary judgment in favor of the state where no redemption of the subject premises was made within the period provided by the statute and where the action was commenced more than six months after the deed to the state was recorded (MCLA 211.67, 211.67a, 211.74, 211.431).

DISSENT BY J. H. GILLIS, J.

7. TAXATION—TAX PROCEEDINGS—JURISDICTION—NOTICE.

*The basis for court jurisdiction in government tax foreclosures, and the reason personal service upon the owner of the land was not required in the past, is that such proceedings have been conveniently characterized as actions in rem.*

8. PROCESS—ACTIONS IN REM—NOTICE.

*Actions in rem traditionally are viewed as proceedings directed against property rather than persons, the purposes of which are to determine the interests of all persons, known or unknown, in the res, and the object of notice in an action in rem is not to secure jurisdiction over the body of a person, but merely to warn those interested in the property to appear and defend.*

9. TAXATION—TAX PROCEEDINGS—NOTICE.

*Local governments should send notice by mail to the parties last assessed before the sale of property for back taxes and it should be mandatory that such notice be sent.*

Appeal from Kent, John T. Letts, J. Submitted Division 3 February 7, 1973, at Grand Rapids. (Docket No. 14690.) Decided March 29, 1973. Leave to appeal granted, 389 Mich 817.

Complaint by Carl Dow, Rose Dow, and Marie Parker Smith against the State of Michigan to set aside a sale of their real property for delinquent taxes. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Vander Veen, Freihofer & Cook* (by *George E. Pawlowski),* for plaintiffs.

*Frank J. Kelley,* Attorney General, and *Jerome Maslowski* and *Clive D. Gemmill,* Assistants Attorney General, for defendant.

Before: DANHOF, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

DANHOF, P. J. This is an action by plaintiffs, Carl Dow, Rose Dow, and Marie Smith, to set aside the sale of their real property for delinquent taxes. The trial court granted defendant's motion for summary judgment on plaintiffs' cause of action. Plaintiffs appeal. We affirm.

This case comes to us on agreed facts. In substance, the facts show plaintiff Smith was the titleholder of a lot in the City of Grand Rapids. Plaintiffs Carl and Rose Dow were equitable owners of the property pursuant to an existing land contract. The premises were rented to and occupied by others.

Since city property taxes for 1965 in the amount of $35.82 had not been paid, the Auditor General in 1967 designated the Sentinel Leader of Sparta, Michigan, a town some ten miles north of Grand Rapids, to publish the circuit court order and

petition for public sale of the property, together with a notice of hearing for the determination of the amount of taxes and interest due.

Sparta, Michigan, had a population of about 3000. The Sentinel Leader, published weekly, had a circulation of about 2000. Grand Rapids, where the property was situated and where plaintiff Smith resided, had a population of about 200,000. Wyoming, Michigan, where the Dows resided, had a population of about 56,000. Kent County, which encompasses the aforementioned cities, had a population of about 411,000.

Plaintiffs received no notice of the delinquency from the county treasurer. Government records do not show notice was sent. Plaintiffs were without actual knowledge of the tax sale, or the circuit court hearing. Government records show no proof of service of notice to anyone of either proceeding other than the newspaper publication.

At the public auction, held in May, 1968, no bids were received; consequently, the state acquired title to the land.

Only Rose Dow received notice of the redemption period, but the records of the Kent County Clerk and Treasurer's office do not show proof of service by mailing of this notice to any of the plaintiffs. Rose Dow failed to disclose any information concerning the redemption period to either Carl Dow or Marie Smith until after termination of that period on November 2, 1970. Plaintiff Carl Dow then made offers to the state to redeem, but the offers were rejected.

I

Plaintiffs' first contention is that, in this case, publication of notice of the impending tax sale in a

newspaper which has the potential of reaching 1/2 of 1% of the county population, and no other notification, does not satisfy due process of law.

A brief outline of the statutory procedure here involved will aid in the discussion of the issue. The State Treasurer prepares a petition addressed to the county circuit court stating the description of property on which taxes have been unpaid for more than one year after having been returned as delinquent and requesting judgment in favor of the state against the land in the amount specified or sale in default of payment thereof. The county clerk is to notify by mail all persons that local records show taxes on the land to be assessed, but "[f]ailure to receive or serve such notice shall not invalidate the proceedings taken under the state treasurer's petition and decree of the circuit court, in foreclosure and sale of the lands for taxes". MCLA 211.61a; MSA 7.106.

Pursuant to the petition, the circuit court orders a hearing for the determination of the delinquency plus interest, and both the Treasurer's petition and the circuit court order are published for three consecutive weeks in a newspaper designated by the Auditor General. That publication, by statute, is deemed the equivalent of personal service of the notice on all persons interested in the property and gives the circuit court jurisdiction to order sale of the property. MCLA 211.66; MSA 7.111.

The parties are in agreement that all of the mandatory provisions of the statutes dealing with tax foreclosure were complied with. The Sentinel Leader meets the requirements of MCLA 600.1461; MSA 27A.1461 relating to giving of notice by newspaper publication. If there is any merit in plaintiffs' first contention, we would have to hold MCLA 211.61a; MSA 7.106 unconstitutional in

that it directs the county treasurer to send notice by registered mail of the tax delinquency and impending sale to the last known addresses of the persons responsible for payment of the taxes, but further provides that failure to send such notice is not crucial. However, the case is not one of first impression. A similar attack on the constitutionality of earlier Michigan property tax law which provided for notice only by newspaper publication failed before the Supreme Court of the United States. *Longyear v Toolan,* 209 US 414, 418; 28 S Ct 506, 508; 52 L Ed 859, 863 (1907). In holding that notice of tax proceedings by publication alone did not constitute a violation of the due process requirements of the Constitution of the United States, the Court stated:

"The owner of property whose taxes, duly assessed, have remained unpaid for more than one year, must be held to the knowledge that proceedings for sale are liable to be begun as soon as practicable. * * * The proceedings are inscribed on the public records and otherwise made notorious. If he exercises due vigilance, he cannot fail to learn of their pendency, and that full opportunity to defend is afforded to him. This satisfies the demands of due process of law."

Furthermore, although Michigan courts might have construed state constitutional requirements more rigorously than those of the Federal Constitution, they have not done so on the issue which confronts us. In *Lake Orion Heights v Oakland Circuit Judges,* 285 Mich 512, 515 (1938), our Supreme Court held that notice by mail was neither a procedural requirement necessary for jurisdiction, nor was it required by due process:

"The purpose of giving notice, in addition to the publication, is merely to warn the taxpayer of the impending

tax sale and to induce him to make prompt payment of the taxes due. The statutory provision is for the benefit of the State and not for the benefit of the individual taxpayer, and failure to comply with the statute may not be objected to by the taxpayer."

In *Golden v Auditor General,* 373 Mich 664, 673 (1964), a challenge was made to the statutory requirement for notice only to the parties assessed, without requiring notice to persons whose legally protected interests are affected. There, the court pointed out that the nature of reasonable notice is not a static concept, but depends upon the nature of the proceedings. Where proceedings involve the "regular, annual property tax which the owners must anticipate and pay, knowing the consequences of default", requirements of notice can be more relaxed than in proceedings which could not have been anticipated by interested parties.

There can be little doubt that the Legislature relied on the above well-established precedent in failing to amend the statutory machinery to require notice by mail as well as publication. Moreover, we are of the opinion that cases decided by the United States Supreme Court since *Longyear, supra,* have not overruled its holding, even by implication. As was pointed out by the Court in *Golden v Auditor General, supra,* constitutional requirements of reasonable notice depend upon the nature of the proceedings. *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), involved notice by publication to common trust fund beneficiaries who could not reasonably anticipate the timing of a petition by the trustee for a judicial settlement of accounts. The Court in *Mullane* was careful to distinguish those proceedings which seek to adjudicate rights in tangible property located within the state:

"The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law may reasonable be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, * * * or that he has left some caretaker under a duty to let him know that it is being jeopardized." 339 US 306, 316 (70 S Ct 658; 94 L Ed 865).

In *Covey v Town of Somers,* 351 US 141; 76 S Ct 724; 100 L Ed 1021 (1956), the court held that a taxpayer known by local officials to be incompetent was not bound in a tax foreclosure proceeding by notice which would have been constitutionally sufficient in the case of an ordinary taxpayer who could reasonably anticipate and understand the proceedings. *Walker v City of Hutchinson,* 352 US 112; 77 S Ct 200; 1 L Ed 2d 178 (1956), involved the sufficiency of notice by publication of a condemnation proceeding. It is sufficient to point out that a citizen has little reason to anticipate that his property is required by the state for public use, and therefore the case has no relation to the issue that confronts us at present. Cases passing on the constitutionality of laws authorizing seizure of chattels in a person's possession under a writ of replevin issued prior to hearing and judgment also lack revelance. *Inter City Motor Sales v Judge of the Common Pleas Court for the City of Detroit,* 42 Mich App 112 (1972); *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972). The state's interest in the speedy collection of tax revenues

can hardly be compared to those of every day creditors in adhesion contracts.

## II

Plaintiffs' last contention is that their redemptive rights in the property did not terminate upon expiration of the redemption period because there was a lack of compliance with the statutory requirements concerning notice of these rights. It is their claim that the proviso of MCLA 211.73c; MSA 7.119(2) was misconstrued by the trial court. In pertinent part the section reads as follows:

"Not later than 120 days prior to the expiration of the redemption period provided in section 74 of this act, the county treasurer of each county shall send a notice * * * The notice to the person to whom such property is assessed shall be * * * sent by registered mail with return receipt demanded, with postage fully prepaid thereon. * * *

*"Provided,* That failure to receive or serve such notice or any defect therein shall not invalidate the proceedings taken under the auditor general's petition and decree of the circuit court, in foreclosure and sale of such lands for taxes."

In support of their argument, plaintiffs cite *Holmes v Soule,* 180 Mich 526 (1914); *G F Sanborn Co v Richter,* 176 Mich 562 (1913); *McBride v Closser,* 208 Mich 398 (1919); *Woodward v Von Zellen,* 234 Mich 301 (1926), and *McVannel v Pure Oil Co,* 262 Mich 518 (1933). None of these cases deal with MCLA 211.73c; MSA 7.119(2), but rather involved situations where a purchaser under a state tax deed failed to give proper notice as required by MCLA 211.140 *et seq.;* MSA 7.198 *et seq.* The instant case does not involve a private purchaser under a state tax deed.

Furthermore, since the statutory language is clearly to the effect that failure to give notice of redemptive rights does not invalidate foreclosure and sale proceedings taken under the Auditor General's petition, we must refer back to the nature of the title derived by the state in these proceedings. Unless the land is redeemed before the expiration of the redemption period, absolute title vests in the state. MCLA 211.67; MSA 7.112. After title to tax delinquent lands becomes absolute in the state, neither the Auditor General nor the county treasurer has authority to accept the defaulted taxes, with interests and penalties thereon, and thereupon release or nullify the state's title to the property. *Langford v Auditor General,* 325 Mich 585 (1949). The State Treasurer must convey the land to the state by deed. MCLA 211.67a; MSA 7.112(1). Six months after that deed is recorded in the office of the register of deeds for the county in which the land is situated, no suit can be instituted by one claiming through the original title to set aside the state's title. MCLA 211.431; MSA 7.661.

In the instant case, no redemption of the subject premises was made within the period provided by law. Nor was any action commenced within six months after recordation of the deed given to the state. The trial court was therefore correct in granting summary judgment in favor of the defendant when plaintiffs tardily instituted this action to quiet title and set aside the sale of the property for delinquent taxes.

Affirmed.

R. B. BURNS, J., concurred.

J. H. GILLIS, J. *(dissenting).* I do not think the

majority decision allies itself with modern reality and notions of fair play.

As Judge Learned Hand stated in *Spector Motor Service, Inc v Walsh,* 139 F2d 809, 823 (CA 2, 1943):

"It is always embarrassing for a lower court to say whether the time has come to disregard decisions of a higher court, not yet explicitly overruled, because they parallel others in which the higher court has expressed a contrary view. I agree that one should not wait for formal retraction in the face of changes plainly foreshadowed * * * ."

I have no such misgivings in the instant case, nor do I think we should wait for a long overdue retraction of principles no longer valid.

I do not deny that the statute for providing notice to defaulting property taxpayers has, in the past, withstood a similar constitutional attack as that made in this case. When the Justices of the United States Supreme Court, in *Longyear v Toolan,* 209 US 414; 28 S Ct 506; 52 L Ed 859 (1907), spoke of due process, they were dealing with events that occurred at the turn of the century. *Lake Orion Heights, Inc v Oakland Circuit Judges,* 285 Mich 512 (1938), stands on much the same footing. Had nothing occurred in the interim, I would have agreed with the majority in this case. However, it is time for a change in approach.

The basis for court jurisdiction in government tax foreclosures, and the reason personal service upon the owner of the land has not been required in the past, is that such proceedings have been conveniently characterized as actions in rem.

Actions in rem traditionally are viewed as proceedings directed against property rather than persons, the purposes of which are to determine

the interests of all persons, known or unknown, in the res. The object of notice in an action in rem is not to secure jurisdiction over the body of a person, but to merely warn those interested in the property to appear and defend.

But what today is described as an action in rem differs conceptually from its Roman origin, to which it owes its name,[1] and the original notion of our law that the res, or thing, itself occupied the position of the defendant. Commonly, we call proceedings in rem those actions which are, in reality, against persons but which seek to affect their interests in property. Whatever label we choose to attach to the proceeding at bar, the central issue should be how the state is to proceed against defaulting taxpayers whose identity is known through government billing procedures. As Justice Frankfurter, dissenting in *Vanderbilt v Vanderbilt,* 354 US 416, 423–424; 77 S Ct 1360, 1365; 1 L Ed 2d 1456, 1462 (1957), wisely noted:

"Strictly speaking, all rights eventually are 'personal.' For example, a successful suit in admiralty against a ship results of course not in loss to the ship but to the owner. The crucial question is: what is the fair way to proceed against these interests?"

While the theory expressed in *Longyear, supra,* that the owner of property always makes diligent inquiry into the status of his land, ever mindful of the possibility of foreclosure by the government should he fail, for any reason, to render to the state its due, has support in other cases of that era,[2] recent developments mitigate against rote application of that "caretaker theory".

---

[1] *Tyler v Judges of the Court of Registration,* 175 Mass 71; 55 NE 812 (1900).

[2] *See e.g. Pennoyer v Neff,* 95 US 714, 727; 24 L Ed 565, 570 (1878) ("property is always in possession of its owner"); and *Ballard v Hunter,* 204 US 241, 262; 27 S Ct 261, 269; 51 L Ed 461, 474 (1907)

The United States Supreme Court has since *Longyear v Toolan, supra,* and well after the decision in *Lake Orion Heights, Inc v Oakland Circuit Judges, supra,* declared unconstitutional as violating due process, a New York statute prescribing newspaper publication as the only form of notice even as to known and reachable nonresidents in a suit concerning the judicial settlement of a trust company's accounts. That action was characterized as in rem. *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950). The "caretaker theory" showed a fundamental weakness in *Covey v Town of Somers,* 351 US 141; 76 S Ct 724; 100 L Ed 1021 (1956), an in rem tax foreclosure proceeding where notice by mail, publication, and posting to the defendant, known to be an incompetent person, was held insufficient. Obviously, an incompetent could not be held to the presumed knowledge implicit in the caretaker theory, but there are strong indications that the Supreme Court did not intend the *Covey* principle to be confined to its specific facts.

For instance, in *Walker v City of Hutchinson,* 352 US 112, 115, 116, 117; 77 S Ct 200, 202, 203; 1 L Ed 2d 178, 182, 183 (1956), a condemnation case, the Court stated:

> *"[Mullane v Central Hanover Bank & Trust Co, supra]* establishes the rule that, if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. * * *

> *"It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property.*

(owners usually keep informed "[o]f what concerns or may concern their real estate").

\* \* \*

*"In too many instances notice by publication is no notice at all."* (Emphasis supplied.)

The majority opinion discards those decisions as irrelevant to the issue here before us. I can not. It is obvious the newspaper publication here employed did not give notice to anyone interested in the property. The implication in the majority opinion is that the caretaker theory is still valid even though it has no application to incompetent taxpayers or condemnation cases, or even tax assessment cases. See *Wisconsin Electrical Power Co v Milwaukee,* 352 US 948; 77 S Ct 324; 1 L Ed 2d 241 (1956). I fail to understand why the caretaker theory, *if still valid at all,* has had no application in other foreclosure actions as well.

Where a man's automobile or color television set is at stake, due process requires notice and a prior hearing before a creditor is entitled to retake possession. *Inter City Motor Sales v Judge of the Common Pleas Court for the City of Detroit,* 42 Mich App 112 (1972); *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972). Presumably, an installment purchaser of chattels knows when he is in default just as the owner of real property knows when he hasn't paid taxes. Both the chattel buyer and the real estate owner should be held to know that courts and creditors will deal with them in due course. I fail to see why debtors in personal property are entitled to "more due process" than the owner of real estate, whose "asset" will certainly not leave the state in some mysterious fashion on the eve of court action.

I recognize the state is entitled to speedy collection of tax revenues. I recognize that property owners are or should be aware of annual taxation

and the consequences of default. But I also recognize that titleholders frequently pass responsibility for tax payments to land contract vendees or mortgagees and that such changes in assessments are noted by the local government records and assessment rolls. I see no reason why the local government should not send notice by mail to the parties last assessed according to its own billing procedures before sale of the property for back taxes. Certainly such a burden is not sufficiently substantial or costly to justify a lesser form of notice. By statute, notice forms are already made available. MCLA 211.61a; MSA 7.106. I would make it mandatory that such notice be sent. All such a holding would require is the use of a postage stamp.

I believe the majority's reliance on *Golden v Auditor General,* 373 Mich 664 (1964), is misplaced. There, the plaintiffs unsuccessfully challenged the statutory requirements for notice of sale by publication. Careful reading of that decision reveals *the government sent notice by mail to the party last assessed.* I do not think the *Golden* rule is authority which would uphold the taking of real property in satisfaction of a principal debt of $35, with no prior notice to those legally or equitably interested, and with no *attempt* made to use the facilities of the post office, by equating an advertisement 11 picas wide in a newspaper whose valiant efforts total a circulation of 2,000 copies with personal service.

Consequently, with minor changes in the language of Judge Robert M. Toms, as quoted in *Detroit Edison Co v Janosz,* 350 Mich 606, 614 (1957), I relate that:

"[I] fervently [hope] the petitioners in this case will appeal [the] decision [of the majority] and that it will be

promptly and definitely reversed by the Supreme Court in which event [I] will join a host of others in dancing in the streets."

I vote to reverse.