IVERSEN et al. v. MINNESOTA MUT. LIFE INS. CO. et al.

(Circuit Court, D. Minnesota, Third Division. August 11, 1902.)

1. INSURANCE—ASSOCIATIONS—CHANGE OF PLAN—DISSATISFIED POLICY HOLDERS—REMEDIES—ELECTION.

Where, on an insurance association's change of plan, a dissatisfied policy holder elected, in writing, to cancel his certificate and demand a return of the money he had paid, he was bound to pursue that remedy, and was not thereafter entitled to file a bill to compel the society to continue operations under its original plan.

2. SAME—CHARTER—AMENDMENT.

Where the charter of an insurance association specifically reserved to the officers the power of amendment in all save one particular, not affecting the association's plan of operations, the association had power to so amend such charter as to change from the assessment to the old-line plan, also expressly authorized by statute, over the protest of a minority of policy holders.

3. SAME—OBLIGATION CONTRACT.

A change from the assessment to the old-line plan of insurance by an insurance association did not constitute an impairment of the obligation of the contracts of members previously insured under the assessment plan, where no attempt ,was made by the association to repudiate contracts of such members, and the assessments levied thereon were not unreasonable.

[Ed. Note.—Mutual benefit insurance contracts, as affected by subsequent provisions and amendments of charter, constitution, or by-laws, see note to Supreme Council A. L. H. v. Champe, 63 C. C. A. 285.]

AMIDON, District Judge (orally).  If it were not for the fact that I am closely. pressed with work, I should be glad to formulate my views in this case in a written opinion.  That, however, is impossible.  I am confident that further study would in no way modify my judgment as to the correct disposition of the case.  The only advantage it could have would be to furnish a more orderly statement of the grounds of the decision than is possible in an oral opinion.

At the outset, the charges of fraud and insolvency which are made in the bill must be put aside.  They are wholly unsupported by the evidence.  On the contrary, this record furnishes entirely satisfactory proof that the officers of the corporation have throughout acted with perfect good faith and in the exercise of an enlightened judgment.  They have been actuated at all times by an honest desire to promote the interests of all the members of the association, and to secure their common welfare.  What they have done has been justified not only by the condition of this particular company, but by the general experience of a large number of other like enterprises.  Nor is there the slightest foundation for the charge that the defendant is insolvent.  On the contrary, the record shows that its condition under the changes which have been made has steadily improved.  This has not only been established by the statements of the company, but by the testimony of eminent actuaries, who are entitled to speak with authority on such a subject.  Furthermore, it appears from the record that this company is licensed to do business in nearly all of the leading states of the Union, after a careful investigation of its affairs by the Insurance Departments of the several states.  These considerations leave not the slightest ground for the charges of insolvency.

Before proceeding further with the merits of this case, it may be proper to consider who the complainant in the suit is.  The complainant Wright is without any standing in court.  When the changes in the company's method of doing business were adopted, he elected, with full knowledge of those changes, to cancel his certificate and demand return of the money which he had paid.  This he did in writing, so that there is no chance to question the character of his action.  Having elected to cancel his policy and demand back his money, that is the remedy he was bound to pursue.  If he is entitled to any relief, it is to be found in an action at law for the recovery of the money which he demanded at the time of the rescission.  His claim is therefore simply a money demand which has not been reduced to judgment.  For this reason he has no standing in court to maintain a suit like the present.  No other policy holders have in fact joined with the complainant in asking the relief demanded in the bill.  My decision of the case, however, would be in no way changed if every person whom the complainant claims to represent were in fact a party upon the record.  There remain for consideration two questions: First. Has the company departed from the fundamental law of its being, in a manner forbidden either expressly or by implication by its arti-

cles of association? Second. Has the company done anything to impair the vested rights of the holders of its certificates of insurance? It is not claimed by counsel for the complainant that the association has violated any express provision of its charter. He claims that the changes which were made in its method of doing business are so radical as to be forbidden by implication. In determining the force of that contention, one must look carefully to the charter itself. Many of the authorities which are cited by counsel for complainant in support of his contention are based upon charters which in themselves contain no express reservation of the right of amendment. The charter of the defendant company specifically reserves to the officers the power of amendment in every particular except one, and it is not claimed that they have made any amendment in that particular. The fact that the power to amend was restricted in one particular throws additional weight upon the scope of the power to amend in other respects. Of course, the power to amend did not invest the officers with authority to launch this association into an entirely new business. For example, it could give them no authority to engage in the business of fire insurance. It did, I think, however, reserve to them the power to make any amendment which was reasonably calculated to accomplish the purpose which the association had in view at the time of its formation. Nothing has been done by the officers which violates this principle. The changes which have been made relate entirely to the manner of doing the business, and not to its character. Under the old plan of assessment insurance, the members were required to make contributions from time to time sufficient to meet the death losses. In the early stages of the association that was found to be adequate, but as the average age of the members increased, and the death rate accordingly increased, the company was confronted with the impossibility of getting in new members. This is the history of all assessment insurance. As soon as the assessments become sufficient in amount to make the charge for the insurance approximately the same as is necessary to secure old-line insurance, persons seeking insurance will choose the certainty of an old-line policy in preference to the uncertainty of assessment insurance. An assessment company can only be kept going by steady increase of its membership, and, under the law that I have just adverted to, it becomes impossible to keep up the increase in membership. The defendant was required to meet this emergency. Three alternatives were presented: First, it could frankly admit that the plan of doing business upon which it entered must result in failure, and ask that its affairs be wound up and its assets distributed; second, it could pursue the original plan until bankruptcy actually occurred; or, third, it could adopt such a method of doing business as would perpetuate the life of the association. The complainant frankly says that the association was bound to know the probable result of its methods of doing business when it started, and that every member is entitled to have that plan of operation either carried out until insolvency ensues, or wholly abandon it and have the effects of the association distributed.

This contention wholly disregards the power of amendment that was reserved to the association. The whole question is, simply, how shall the members be required to make such contributions as will be adequate to meet the death losses and continue the company as a going concern? Under the assessment plan, the payments were made after the loss occurred. Under the new method, contributions are made in advance, sufficient, under the established rules of mortuary tables, to provide for losses as they shall occur in the future. The change simply relates to the manner of doing the business. It is in no way a change of the essential character of the business upon which the corporation entered at the beginning. The complainant virtually contends that he has a right to have this business carried on in a manner that will, in the light of a very large experience, result in insolvency, in order that he may take the desperate chance of dying before the insolvency actually occurs. The changes that were made have been approved by an overwhelming majority of the association. It would be remarkable, to say the least, if a minority of the members could insist that either the enterprise should be wholly abandoned, or that it should be carried on in a manner which would result in its ultimate failure, and force this course upon a majority of the members, who simply desired to make such changes as, in the light of a very large experience, were necessary to carry on the business of the company permanently, and accomplish the purpose which every member had in view at the time the association was formed. What has been said in regard to the change that was made in 1898 is equally applicable to the further change that was made in 1901. The latter change was simply a carrying out to completion of the first modification. It was authorized by express provision of the statute. The course marked out by the statute has been carefully pursued by the company. Complaint is made that proper notice of the meeting at which the change was adopted was not given to the members. The statute, however, expressly provided that in case the change was made at a special meeting a special notice should be given to the members; but it also contained power to make the change at any regular or annual meeting, and no requirement is contained in the statute on the subject of notice if the change was made at such a meeting. Upon general principles, the company was authorized to do at its annual meeting, without special notice, whatever it had power to do under the law. The meeting was very largely attended, and the vote was almost unanimous in favor of the change; there being only a single vote in opposition. The meeting was therefore legally held, and its action was legal, unless it is open to objection upon the second ground which I have already mentioned.

This brings us to a consideration of the question whether the changes which were made in 1898 and in 1901 impaired the obligation of those contracts which were executed before the changes were made. It is not claimed that there has been any repudiation of those contracts, or that the company was authorized by those changes to alter in any way the terms of the contract then in force. Nor has the

company attempted to make any such change. On the contrary, the evidence shows that it has carried out all those contracts fully, in accordance with their terms, and that every death loss has been promptly met. Complainants aver, however, that the amount of assessments has been increased. This, however, was exactly what was to be anticipated from the very nature of the association, and it cannot justly be claimed that the increase in the assessments is attributable to the change in the method of doing business. At the present time there is no complaint that these assessments are unreasonable. On the contrary, the evidence plainly shows that they are in themselves insufficient to pay the cost of the insurance granted under the old contracts. Complainant, however, contends that he was entitled to have the company go forward soliciting members under the old plan of assessment insurance, and that its failure to do so is an impairment of its contract. This contention has already been disposed of. A member had no right to insist that the association should continue its business upon a basis which would in all probability result in bankruptcy. The officers of the company assert that there is no intention of permitting the assessments upon the old members to become unreasonable. There is a large fund on hand pledged as a security for the payment of those early members. If by reason of lapses the assessments should at any time in the future become unreasonable, it will then be time for the injured party to complain. At the present time no such injury has been suffered. No contract has in fact been in any way impaired. It would be remarkable if the complainant were entitled to have this association wound up and its purposes defeated by reason, not of injuries suffered, but of injuries anticipated. There is nothing whatever in this case to bring it within the terms of the constitutional provision which forbids the passing of any law impairing the obligation of contracts. Neither the power nor the duty of the association to perform its contracts has been in any way lessened.

I ought not to conclude what I have to say in this case without making some reference to the forces that were behind this litigation at the time of its institution. Before the suit was brought, it was promoted for months by a man by the name of Carter. It is not necessary to review here the various incidents of his rascally persecution of this defendant.

Counsel for the complainant says that he is a crank. His conduct, however, cannot be covered by any such charitable mantle. He has not acted under a delusion. He is a dishonest rascal.

The evidence leaves no doubt that his conduct in this whole matter has been actuated by no delusion, but by what, if it had been carried to its ultimate purpose, would have been fundamentally criminal. He has not been seeking to rectify anybody's wrongs. His purpose has been to line his own pockets. The court cannot overlook the fact that he was the person in the outset who instigated this proceeding. I wish it understood, however, that these remarks cast no reflection whatever upon Mr. Byers. I have been impressed throughout this trial by his entire candor and fairness, and I believe that he has had no other purpose than to assert a right in

which he had entire confidence. I think the young attorneys, Messrs. Dillon & Goetz, were imposed upon by this man Carter. The case was one in which such imposition could easily be practiced. It was quite out of the ordinary line of experience. It was easy for him to juggle with the affairs of the company, and present them in such a way as would convince a person that the company had been mismanaged, and the frequent failures of assessment insurance companies would give additional ground for confidence in such a charge. The utmost that can be said about these young men, so far as the record shows, is that they lent a too easy credence to this man. The record shows that the complainant himself, Mr. Trubey, is engaged in promoting personal injury litigation, and, looking at the entire case, that seems to be the general nature of this suit.

This case is a striking justification of the wisdom of those statutes which are now in force in nearly all of the older states, which forbid the institution of any such a suit as this except by the Attorney General, at the instance of the Insurance Commissioner.

It ought not to be open to every disgruntled member to file a bill charging an association of this character with fraud and insolvency, and asking for the appointment of a receiver of its affairs. This is a gross wrong to the credit of the association and to those members who are interested in its promotion.

Suits of this kind led to the passage of the statutes to which I have referred, and at the present time in nearly all of the older commonwealths there are laws forbidding that any such action should be brought by a private individual. Every private person having a grievance of this character is compelled to submit his case to an officer who by experience and special knowledge can judge of its substantial merits, having before him a full knowledge of the affairs of the association. In no other way can the credit of such enterprises be protected from the most damaging assaults.

This case is wholly without merit. It ought never to have been instituted. A decree will be entered dismissing the bill upon the merits, with costs in favor of the defendants.