SHERA v. MERCHANTS' LIFE INS. CO. et al.

(District Court, S. D. Iowa, E. D. April 1, 1916.)

1. COURTS ⊂⊃347—SUBMISSION ON BILL AND ANSWER—EFFECT.

Equity rule 31 (198 Fed. xxvii, 115 C. C. A. xxvii) abolishes the reply, save where a set-off or counterclaim is included in the answer, declaring that the cause shall be deemed at issue upon the filing of the answer, and any new or affirmative matter therein shall be deemed denied by the plaintiff; while rule 33 (198 Fed. xxvii, 115 C. C. A. xxvii) abolishes exceptions for the insufficiency of an answer, providing that, if it set up an affirmative defense, the sufficiency may be tested by motion to strike. *Held* that, on submission upon bill and answer, new and affirmative matter pleaded in the answer must be taken as denied, the answer not being accepted as true, as it was under the old practice, and so the case is before the court upon the averments of the bill and admissions and denials of the answer not deemed controverted.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⊂⊃347.]

2. COURTS ⊂⊃347—PRACTICE—ANSWER.

Under equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi), providing that the answer shall avoid any general denial, and requiring the statements of the answer to specifically admit, deny, or explain the facts upon which the plaintiff relies, the court is not, upon submission on bill and answer, limited to general denials, but may consider explanatory facts in connection therewith.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⊂⊃347.]

3. FRAUD ⊂⊃50—EVIDENCE—PRESUMPTIONS.

Fraud cannot be presumed; the presumption being that individuals are honest.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ⊂⊃50.]

4. INSURANCE ⊂⊃32—ASSESSMENT INSURANCE—ACTS OF INSURER.

Where acts of an assessment insurer were unlawful and ultra vires, the motive prompting the acts is of no importance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 37; Dec. Dig. ⊂⊃32.]

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EVIDENCE ⬅➡5(2)—JUDICIAL NOTICE—LEGISLATION.
   The courts will take judicial notice of the increasing difficulty of assessment insurers to continue existence; it being a matter of common knowledge that, where the companies reach a certain age, it is difficult to obtain new members, because of the increasing age of the members and the enhanced death rate.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 4; Dec. Dig. ⬅➡5(2).]

6. INSURANCE ⬅➡53—ASSESSMENT INSURANCE—CHANGE IN ORGANIZATION OF COMPANIES.
   Pursuant to Acts Iowa 32d Gen. Assem. c. 83, declaring that any existing domestic company or association may, upon a majority vote of its trustees or directors, amend its articles of incorporation and by-laws in, such a manner as to transform itself into a legal reserve or a level premium company, amendments to the articles of incorporation of an Iowa assessment association were adopted at a regular annual meeting, without previous notice, whereby the association was changed to a capital stock company, to be controlled by a board of directors selected by the holders of the capital stock, thus depriving members of the association of a vote in the selection of officers, or in the control and management of the assets. Plaintiff was the only member of the association who objected; other members acquiescing therein for nearly a year. Held, in view of the fact that the officers of the new company admitted that they had only legal title to the funds of the old association, and averred their intention of distributing the funds in accordance with the spirit of the by-laws of the old association, the change, though improper, will not be disturbed by a court of equity, and the old association restored, for the court would take judicial notice that, were it restored, it would probably become insolvent, and the rights of other members than plaintiff should be considered; this being particularly true, as plaintiff could obtain relief in an action at law.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 49; Dec. Dig. ⬅➡53.]

In Equity. Suit by Frank D. Shera against the Merchants' Life Insurance Company and others. Hearing on bill and answer. Decree for defendants.

James Bingham and Ellis E. Sluss, both of Indianapolis, Ind., and Hughes & McCoid, of Keokuk, Iowa, for plaintiff.

Seerley & Clark, of Burlington, Iowa, J. R. Lane, of Davenport, Iowa, and Locke & Locke, of Dallas, Tex., for defendants.

WADE, District Judge. This case is before the court upon bill and answer. Application for such submission was made by plaintiff, and concurred in by defendants. The effect of such submission is now in controversy.

[1] Under previous equity rules, upon submission upon bill and answer, the answer became evidence—"the only evidence the defendant needs, for it must be taken as true in all respects." Harris Reynolds v. First National Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733. The present equity rules do not seem to contemplate the submission of a case upon bill and answer; they seem rather to direct that the sufficiency of the answer as a defense, in view of the averments of the bill of complaint, shall be raised by motion to strike. Equity Rule 33 (198 Fed. xxvii, 115 C. C. A. xxvii). But, this case having been submitted

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon bill and answer, it is necessary to determine the effect thereof. Under equity rule 31, the reply is abolished, except where set-off or counterclaim is included in answer:

"The cause shall be deemed at issue upon the filing of the answer, and any new or affirmative matter therein shall be deemed to be denied by the plaintiff."

Under this rule, no reply is necessary to new and affirmative matter pleaded by way of confession and avoidance. All new matter is denied by virtue of the rule. This being the rule, I do not apprehend that the submission upon bill and answer can change or modify it; rather must it be assumed that the parties submitted the case upon bill and answer in view of this rule. Therefore the new and affirmative matter pleaded in confession and avoidance in this case must be held to be denied, and the case is before the court upon the averments of the bill, and the admissions and denials of the answer. The court, however, is not limited to the specific denials, but has a right to consider the statements in the answer explaining the denials.

[2] Equity rule 30 requires that the answer shall avoid "any general denial of the averments of the bill." It requires statements "specifically admitting or denying, or explaining, the facts upon which the plaintiff relies." So that the court is not limited to any general denial, but can consider in connection therewith the explanatory facts; but in my judgment it is thus limited.

[3] The answer in effect admits all the averments of the plaintiff's bill, which recites the organization of the mutual assessment company —the membership, insurance in force, method of making assessments and creating funds, and the existence of funds and assets, except that, as to assets, the amount thereof is disputed. That plaintiff is a member and certificate holder since November 23, 1909, is also admitted; and the proceedings of February 10, 1915, by which the Merchants' Life Association was transformed into a stock company, and its name changed to Merchants' Life Insurance Company, is also admitted.

The matters put in issue by the answer are largely the averments of the bill charging fraud and conspiracy, and confiscation of the assets of the Merchants' Life Association. So that the case is before the court upon an admission of the change from the Merchants' Life Association, a mutual assessment company, to the Merchants' Life Insurance Company, a capital stock level premium company, and an admission that all of the assets of the mutual association are now in the possession of the defendants, but with a denial that there were any improper motives, or any fraud or deception, with the assertion that the same was done in the best of faith, and in order to preserve the rights and interests of the certificate holders of the assessment association.

Fraud cannot be presumed. The law presumes that every person is honest until the contrary appears, and in this transaction, under the issues, the court must assume that the individual defendants were, in working the transformation, actuated by honesty of purpose.

[4] Even though it be held that the defendants' proceedings were in violation of law, it does not necessarily follow that they were fraudu-

lent, or with an improper motive.   Men sometimes proceed contrary to law in the best of faith and with the best of motives, and in this transaction it must be borne in mind that the proceedings were in the open, and the court judicially knows that the change from the mutual assessment company to the stock company could not be effected without the approval of the insurance department of the state of Iowa, which is under the guidance of the Attorney General upon legal questions; but, strictly speaking, if the acts done were unlawful and ultra vires, as claimed by the plaintiff, the motive would not be of great importance.

[5, 6]   Upon the issues presented, is the plaintiff entitled to the relief asked?   Quoting from the language of Judge Trieber in Dill v. Supreme Lodge Knights of Honor (D. C.) 226 Fed. 807:

I may say that I "have given the matter the most careful consideration, realizing fully the importance of the case. Thousands of men, women, and children are interested in the result of this case. Perhaps in a large majority of the cases the insurance obtained in this lodge [association] is probably the only provision they have made for the protection of their wives and children after death. The able arguments made by counsel have aided us considerably in reaching our conclusions. We have carefully examined the numerous authorities, which the diligence of counsel has submitted to us, and given them such force and effect as we have thought they are entitled to. There were quite a number of questions argued to the court, all of which have received careful consideration."

The court cannot limit its vision to the little group consisting of the plaintiff and the defendants.   It is conceded that there are at least 25,000 members of the assessment association, each of whom will be affected by the decree entered in this case.   They are not in court, but nevertheless they are entitled to the consideration and the protection of the court.   Quoting again from Dill v. Supreme Lodge Knights of Honor, and applying the language to the Merchants' Life Association, the assessment company:

"While it is true that this is a corporation, yet it is not a business corporation, nor a corporation for the purpose of doing business for a profit. It is simply an aggregation of individuals to create a fund in order to enable the parties to make provision for their wives, children, or their heirs in case of death. There is no profit in it; assessments are made for the purpose of paying death benefits; no one receives any profits; no investments are made; there is no capital. We might properly call it a charity in the nature of a trust fund to provide in the case of death for the survivors of the deceased members. That courts of equity have jurisdiction in all cases of trust is elementary. * * * It has been the public policy of every state in the Union—in fact, we might say, of every civilized government—to try and protect the members of such organizations by preventing the corporation, fraternal society of this nature, from carrying on its business whenever proof establishes beyond question, as it does in this case, that it would be impossible for the corporation to carry out the objects of its existence and induce its members to continue paying assessments, especially when they are increased periodically, which would be perpetrating a fraud on them."

While, under the present equity rules, much of the answer, pleading facts showing necessity for a change from the assessment to a level premium plan, is considered denied, yet the court must take judicial notice of what is a matter of common knowledge, that assessment companies, organized and operating upon the plan of the Merchants'

Life Association, are, and have been for a number of years, finding it very difficult to continue their existence. In recognition of these conditions, the Legislature of Iowa, in 1907, enacted a law (chapter 83, 32 G. A.) which, among other things, provided that:

"No life insurance company or association, other than fraternal beneficiary associations, which issues contracts, the performance of which is contingent upon the payment of assessments of call made upon its members, shall do business within this state, except such companies or associations as are now authorized to do business within this state and which shall value their assessment policies or certificates of membership as yearly renewable term policies according to the standard of valuation of life insurance policies prescribed by the laws of this state."

This legislation, prohibiting the organization of new assessment companies, naturally had the effect of creating public opinion against them. The court also must judicially know, because it is a matter of common knowledge, that these assessment companies at a certain age reach a point where, on account of the age of the members and the increased death rate, it is difficult to procure new members to take their place as they pass away. So that there is ample reason to feel that the individual defendants honestly felt that something must be done in the interest of all the members of the association, and I apprehend, if they had changed the association from an assessment to a level premium company, without issuance of capital stock, that their acts would be above criticism.

But at the regular annual meeting in 1915, without previous notice of their intention, amendments to the articles of incorporation were adopted, fixing the capital stock at $100,000, and changing the name of the corporation from the "Merchants' Life Association" to "Merchants' Life Insurance Company," and in every way providing for the control and management of said corporation by a board of directors selected by the holders of the capital stock. This change deprived the members of the association of a vote in the selection of officers, or in the control and management of the assets of the association, as provided by the original articles of incorporation, under which the plaintiff and his fellow members became members of the association. Under chapter 83 of the Acts of the 32d G. A., it was provided that:

"Any existing domestic assessment company or association may, with the written consent of the auditor of state, upon a majority vote of its trustees or directors, amend its articles of incorporation and by-laws in such manner as to transform itself into a legal reserve or level premium company."

Under this provision, and under the general power to amend the articles of incorporation reserved in the articles of incorporation of the association and in the statutes of the state of Iowa, defendants contend that the transformation effected by the amendments adopted at the February, 1915, meeting, were authorized. With this claim I cannot agree; but, in the view I take of the case, it is not necessary to enter into a discussion upon that point. We are dealing with conditions. The change has been made. It is now more than a year since the change to a capital stock company was effected. This case has been pending about seven months. I must assume that all the members of the association have long ago had full knowledge of what was done,

and I must also assume that many of the members have had knowledge of the pendency of this proceeding; but at no time up to the present has there been any suggestion brought to the notice of the court that any other member, except the plaintiff, is dissatisfied with what was done. It is true that the plaintiff alleges that the action is brought in behalf of himself and other members; but this averment is denied by the answer, and there is no proof that any other member is desirous of having the court grant the relief which the plaintiff prays herein.

This court of equity cannot shut its eyes to the interests of some 25,000 members, all of whom are free agents, and none of whom are seeking relief; nor can the court be oblivious to the fact that, by granting the relief asked by the plaintiff, it would be almost certain that the association would ultimately reach insolvency and dissolution. The association cannot live without procuring new members; without new members to take the place of those who die, the assessments would reach a point where they would not be paid, and I cannot believe that it would be possible to reinstate the old association with any hope of a continuance of its business. Therefore the relief asked by the plaintiff cannot be granted without irreparable injury to some 25,000 other persons. This court cannot consider the equities of the plaintiff alone; it must consider the equities of all persons interested in the result of this suit. Plaintiff is interested only to the extent of his insurance under his $2,000 policy, and to the extent of his equity in the existing funds of the association. Whatever damage he has sustained can be recovered by him in an action at law, and therefore, under all of the circumstances, I cannot consistently grant the relief prayed.

Much stress has been laid upon the fact that the company, as at present organized, has possession of the funds and assets of the old association. The defendants admit that they have such funds, but they contend that they only hold the legal title thereto, and admit that the equitable title thereto belongs to the members of the old association, and that their purpose is to administer the same according to the spirit of the articles of association under which said funds were accumulated. This assurance of intention may not be sufficient; it may be that the members of the old association should have the aid of the court in placing such restrictions upon the use of such funds as will assure their application to the purposes for which they were accumulated. But the plaintiff does not seek such relief, nor would a court grant such relief, except upon a consideration of the interests of all the members in a proceeding in which a fairly representative number of the members could be heard.

Therefore, without passing upon the other questions presented, the relief asked by the plaintiff is denied, and counsel for defendants will prepare decree, reserving proper exceptions, submitting the same to counsel for plaintiff, who may file objections to form, and the same will then be submitted for signature.