## JOHN P. LEININGER, APPELLEE, V. NORTH AMERICAN NATIONAL LIFE INSURANCE COMPANY, APPELLANT.

### FILED JULY 16, 1927.  NO. 25866.

1. **Constitutional Law:** ACT AUTHORIZING CHANGE OF PLAN OF INSURANCE COMPANY. Legislative authority conferred by section 7828, Comp. St. 1922, to amend articles of incorporation so as to change the plan of business done by a life insurance company from the mutual or assessment plan to a stock basis, does not work a violation of the provisions of the Fourteenth Amendment of the Constitution of the United States, nor of section 3, art. 1, of the Constitution of Nebraska, that no person shall be deprived of property without due process of law, where the right to make such an amendment was expressly reserved in the articles of incorporation, and such statute also provides: "Such change shall in no way prejudice or impair any pending action or right previously acquired, or annul or change any existing contract of such company."

2. **Insurance:** CHANGE OF PLAN. The transformation of a life insurance company organized and doing business on a mutual or assessment plan to a stock basis under the provisions of section 7828, Comp. St. 1922, *held*, not to be such a fundamental departure from the business for which the company was organized as to prevent the change being made without the consent of all the members, where by the articles of incorporation the right to make just such an amendment was expressly reserved.

3. **Constitutional Law:** DUE PROCESS OF LAW. "Due process of law" within the meaning of the Fourteenth Amendment of the Constitution of the United States, and section 3, art. I, of the Constitution of Nebraska, is not intended to control the power of the state to determine by what process or on what manner of service rights may be asserted or determined, provided such procedure will afford reasonable notice and fair opportunity to be heard before the courts at some stage of the proceedings prior to final determination; and *held*, that the service of notice of the time and place of meeting and of the proposition to be submitted provided by said section 7828, Comp. St. 1922, to be sent to each person entitled to vote, through the mail, directed to his last known address, was a reasonable and practicable one and suited to the nature of the proceedings.

4. **Insurance:** LACHES. Applicant, a policyholder in a life insurance company, instituted this action to set aside and annul proceedings theretofore had transforming such insurance company, which was organized and doing business on the mutual plan,

,to a stock basis. It appears that the instant case was not instituted for about four years after the transformation proceedings had been entirely completed. Applicant received the notice of the time and place of meeting for voting on the proposed change and copy of plan of transformation which included statement of assets and proposed distribution thereof. He accepted and retained his portion of the surplus to which he became entitled on such transformation and knew that the remainder of the surplus was being distributed to other participating members of the mutual company; that the company had commenced and was operating as a stock company; and that stock therein was being sold and a surplus created. He failed, without excuse, to exercise the right of appeal from order of department of trade and commerce permitting the change, paid premiums to and dealt with the company as a stock company, and apparently acquiesced in the transformation until about the time of the commencement of these proceedings without objection or protest. In the meantime the company entered into business in new states, writing new risks as a stock company to the extent of seven million dollars, collected a large amount of premium from parties who dealt with the company as a stock company, and paid losses accruing. *Held*, applicant is estopped by laches from maintaining this action.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed, and proceeding dismissed.*

*Frank S. Howell* and *Jackson B. Chase*, for appellant.

*John M. Priest, contra.*

*Gaines, Van Orsdel & Gaines, Gurley, Fitch & West* and *Wright & Thummel, amici curiæ.*

Heard before ROSE, DEAN, DAY, GOOD and THOMPSON, JJ., ELDRED and L. S. HASTINGS, District Judges.

ELDRED, District Judge.

In 1922, proceedings were had for the transformation of the appellant, a mutual life insurance company, to a stock company, under the provisions of section 7828, Comp. St. 1922. The publication of the amended articles of incorporation was completed June 3, 1922, at which time, under the statute, the transformation became effective. On July 12,

1926, the appellee, Leininger, filed an application with the department of trade and commerce, seeking to have such transformation declared void and annulled. On an *ex parte* hearing the application was denied by the department of trade and commerce, and the applicant, Leininger, appealed to the district court. On July 20, 1926, the North American National Life Insurance Company, hereinafter called the company, intervened and was permitted to answer, and from an adverse judgment entered December 13, 1926, by the district court, the company files this appeal.

The company was organized in 1906, as a mutual life insurance company, authorized to do a life insurance business on the stipulated premium plan, "but its members reserve the right to accept any provision of law now in force, or which may hereafter be enacted for changing from the stipulated premium plan to the mutual legal reserve, or joint stock plan." While some amendments were made to the articles of incorporation, the provision quoted was at all times a part thereof, up to and including the time of its transformation involved herein.

On July 23, 1907, the company issued to the appellee a policy for $4,000, known as a special profit sharing, limited payment, life increasing policy.

The pleadings filed in the district court are of such length that space will not permit the setting out of the issues in detail; but, briefly stated, the propositions urged by appellee for setting that aside and annulling the transformation are that the proceedings for the transformation of the company from a mutual company to a stock company were not had in substantial compliance with law, but were conducted in an irregular and unauthorized manner, in the particulars hereinafter referred to, and were fraudulent; and that section 7828, Comp. St. 1922, under which said transformation was attempted, is unconstitutional.

The appellant not only controverts the foregoing propositions, but contends that the applicant has no capacity or standing to maintain this proceeding; and, further, that he is estopped at this time to assert either that the trans-

formation proceedings were void or that said law is unconstitutional.

Except as to the allegations of intentional fraud, the trial court found generally for the applicant (appellee) on his application; that the law under which the transformation was sought to be effected was unconstitutional; that the transformation proceedings were irregular and constructively fraudulent, and it was decreed that the proceedings be set aside as to the applicant and those similarly situated, so that they may, upon maturity of their policies, or before, if their rights become endangered, demand and receive of the company all that they would be entitled to had the transformation not been had.

The statute provides that an appeal from the department of trade and commerce should be heard as in equity. Section 7895, Comp. St. 1922.

It is contended that section 7828, Comp. St. 1922, violates the constitutional rights of the appellee as guaranteed by the Fourteenth Amendment of the Constitution of the United States, and section 3, art. I, of the Constitution of Nebraska, that no person shall be deprived of property without due process of law.

By the provisions of section 1, art. XII, of our present Constitution, and section 1, art. XIb, Consttiution of Nebraska, 1875, in force at the time said section 7828 was enacted, it is provided that all general laws relating to corporations may be altered from time to time, or repealed. While the transformation statute was not enacted until· after the appellee's policy was written, appellee was bound to know that the legislature was authorized by the Constitution to amend or alter the law under which the company was organized; and the articles of incorporation of the company reserve the right to make just such a change as was made.

In *Polk v. Mutual Reserve Fund Life Ass'n*, 207 U. S., 310, which involved the constitutionality of a New York statute relating to the reorganization of insurance companies as against the charge that it violated the provisions

of the federal Constitution against the impairment of an obligation of a contract, and also the due process of law provision, it was held that such constitutional provisions were not violated by the law under consideration in that case, in which the insurance company had incorporated in 1883, under a law then in force, and subsequently complainant became a member. As organized, the company was to do business on a cooperative plan. In 1892 a new law was enacted, under which the charter was amended and the company reorganized as a mutual level premium company. The reorganization proceedings in that case provided: "This reincorporation while insuring the stability of the company makes no change in your policy."

The transformation proceedings in the instant case provide that they shall in no way annul or change any existing contract of the company; while the statute provides such change shall in no way prejudice or impair any pending action or right previously acquired, or annul or change any existing contract of the company. Comp. St. 1922, sec. 7828.

The Constitution of New York providing that laws affecting corporations may be altered from time to time is identical, in substance, with the provisions of our Constitution above cited. Neither in the *Polk* case nor in the instant case, was there any legislative authority for the transformation at the time of the issuance of the insurance contract. In the opinion in that case it is stated: "It is immaterial whether the power to alter the charter is reserved in the original act of incorporation, or in the articles of association under a general law, or in a Constitution in force when the incorporation under a general law is made, as in the case at bar." As controlling on the question at issue in that case, the court, in the opinion, referred to the case of *Wright v. Minnesota Mutual Life Ins. Co.*, 193 U. S. 657, which dealt with an act of the legislature of Minnesota, and the amendment of the articles of incorporation of a mutual insurance association to an "old line" flat premium plan; the act was adopted and amendment made after the com-

plainants became members of the association, and it is
there stated:

"Where the right of amendment is reserved in the statute
or articles of association, it is because the right to make
changes which the business may require is recognized, and
the exercise of the privilege may be vested in the controlling
body of the corporation. In such cases, where there is an
exercise of the power in good faith, which does not change
the essential character of the business, but authorizes its
extension upon a modified plan, both reason and authority
support the corporation in the exercise of the right."

The constitutional power of the legislature to amend or
repeal the law under which the company was operating
was a condition, subject to which not only the company ac-
cepted its corporate existence, but also subject to which the
appellee accepted his insurance contract. The insured must
have contemplated the possibility of an amendment or re-
peal of any law affecting his rights. *Illinois Life Ins. Co.
v. Tully,* 174 Fed. 355; *Chicago Life Ins. Co v. Needles,* 113
U. S. 574; *Iversen v. Minnesota Mutual Life Ins. Co.,* 137
Fed. 268; *Looker v. Maynard,* 179 U. S. 46.

The constitutionality of the law is further challenged be-
cause it permits the nonparticipating members to have
equal rights with the participating members to purchase
stock in the company as transformed. The plan adopted
does so provide, in substance. Section 7828, Comp. St.
1922, says "each member shall have the full right to sub-
scribe," but does not define who are members. We must
look to some other source for a definition of that term. It
appears to be clearly defined by the law in force at the
time the company was organized, which provides: "Every
person whose life is insured by any such company shall be
a member thereof as long as his policy is in force." Comp.
St. 1905, sec. 4089. Section 7819, Comp. St. 1922, pro-
vides: "The articles of a mutual company * * * shall pro-
vide that every person * * * insured shall be a member
thereof and have one vote." The articles of incorporation
prior to the transformation appear to treat the terms pol-

icyholders and members as synonymous.  Section 1, art. 6,
of such articles, provides for the annual and special meet-
ings of "policyholders" without indicating any particular
kind of policy, and section 2 of said article 6, which has
reference to such annual and special meetings, provides
that "each member present whose policy is in force shall
be entitled to cast one vote."

In harmony with the provisions of the statute and ar-
ticles of incorporation, it is evident that all policyholders,
whether participating or nonparticipating, were treated as
members by the company, and as such entitled to share in
its management; and they were so treated in the compre-
hensive plan.  If both the participating and nonparticipat-
ing policyholders were entitled to participate in the election
held to adopt or reject the proposed plan of transforma-
tion, then the action of the majority of those then present
in approving the plan did not violate .any of the constitu-
tional rights of the appellee, nor did the fact that the law
in question may not have specifically defined the term
"member" it having been sufficiently defined in other por-
tions of such insurance law, make it inimical to the Con-
stitution.

The exact standing of participating and nonparticipating
policyholders, as between themselves, we do not find to be
a question at issue herein; they by their actions placed a
construction upon the law as to the rights of both classes
of policyholders to vote as well as participate in the pur-
chase of stock, and acted thereon.  If any individual mem-
ber felt aggrieved at the time of the action taken, he should
have promptly sought judicial determination of his rights.

The validity of section 7828, Comp. St. 1922, is further
challenged for the reason that the only provision for notice
to stockholders is by sending notice of time and place of
meeting, with proposition to be submitted, "through the
mail, directed to the last known address;" it being con-
tended that a change from a mutual to a stock company
was such a fundamental change as to effect a radical de-
parture from the original purpose.for which the company

was organized. It will be borne in mind that the change made is the identical change or amendment which they reserve the right to make in the articles of incorporation. In *Lord v. Equitable Life Assurance Society*, 194 N. Y. 212, it was held that a change from a stock company to a mutual company was not such a fundamental change in the business of the organization as to prevent such change being made without the consent of all of the members. The court said:

"Thus the charter carried in its soil the seeds of mutualization, planted by the founders of the company in readiness to sprout at the will of three-fourths of the directors, regardless of the wishes of the stockholders, as such. They took their stock subject to the right thus reserved to the directors and were bound to abide by the result, for the reservation in a certificate of incorporation of the right ·to amend the charter in any manner permitted by law is as binding on the stockholders as any other part of the certificate. * * * Even if the result would place the policyholders in control of the affairs of the company, the stockholders took their stock subject to that contingency, and cannot now lawfully complain of what they or their predecessors consented to when they invested in the capital stock. * * * The principle established by the authorities seems to be that the legislature under its reserved power may amend any charter in any respect that is not fundamental when the object of the corporation and property acquired by it are considered. Granting that it may not convert a corporation into something entirely foreign to the object for which it was created, such as turning an insurance company into a railroad company for instance, still it can regulate investments, methods of administration and details of procedure in the interest of the public and all concerned. The public is interested in the proper management of a company with such enormous assets as the defendant possesses, because, if for no other reason, those assets were mainly derived from the public. The statute before us authorized no change in principle, for the old charter per-

mitted mutualization, but it simply allowed an object contemplated by the charter to be effected by a method varying in unessential details from that provided by the charter itself. Mutualization in any form would necessarily affect to some extent the power of the stockholders to elect directors." See *Picard v. Hughey,* 58 Ohio St. 577.

"Due process of law," within the meaning of the constitutional provisions, is not intended to control the power of the state to determine by what process or on what manner of service rights may be asserted or determined, provided such procedure will afford reasonable notice and a fair opportunity to be heard before the courts, at some stage of the proceedings, prior to final determination. *Hacker v. Howe,* 72 Neb. 385; *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549; *Pearson v. Yewdall,* 95 U. S. 294; *Ballard v. Hunter,* 204 U. S. 241; *Campbell v. State,* 171 Ind. 702.

Personal service is not necessary to constitute due process of law. The legislature may prescribe "a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him." *Hurley v. Olcott,* 198 N. Y. 132, 28 L. R. A. n. s. 238.

"If we hold, as we must, in order to sustain this legislation, that the Constitution does not positively require personal notice in order to constitute a legal proceeding due process of law, it then belongs to the legislature to determine in the particular instance whether the case calls for this kind of exceptional legislation and what manner of constructive notice shall be sufficient to reasonably apprise the party proceeded against of the legal steps which are taken against him. * * *

" A law must be framed and judged of in consideration of the practical affairs of man. The law cannot give personal notice of its provisions or proceedings to every one." *American Land Company v. Zeiss,* 219 U. S. 47.

See *Ballard v Hunter,* 204 U. S. 241, and *Falender v. Atkins,* 186 Ind. 455.

A letter, "properly addressed and mailed, is presumed, as a matter of evidence, to have reached the addressee in

the usual course of mails; common experience indicating the regularity and certainty with which mail is carried and delivered in the exercise of governmental functions." *Heyen v. State,* 114 Neb. 783, 794.

At the time of the transformation there were about 5,427 members. Personal service of notice, which appellee contends should have been made upon every stockholder, would probably not have been possible; at least it would have been impracticable, and the expense of such service would probably have been prohibitive; that number of members must necessarily have been scattered through many jurisdictions. The mode of service provided by the statute and followed in this case was a practical one, and was suited to the nature of the proceeding; and it was effective, at least so far as the appellee was concerned. There was no exception here to the general rule that a letter properly addressed and mailed or transmitted is presumed to have reached the addressee, as appellee testifies that he received the notice and read it carefully. Had he not been satisfied with the proceedings had before the board of trade and commerce, redress could then have been had by appeal to the courts under section 7895, Comp. St. 1922. We conclude that the notice provided by the transformation law and given by the company was sufficient.

The case of *Huber v. Martin,* 127 Wis. 412, which is the principal case cited by appellee, and one on which he appears chiefly to rely, covers more nearly the questions involved in the instant case than the other cases cited in his brief; but, both the laws under consideration and the facts involved in that case differ in so many particulars from the case at bar as to make it readily distinguishable. We have carefully examined, but do not take the space to review here, all of the authorities cited by counsel for appellee; and while a number of these bear somewhat upon the questions under consideration, yet, when the facts involved in the different cases are weighed in the light of the different statutory provisions, we conclude they do not stand in the way of the conclusions here announced.

It is contended that there were irregularities and defects in the comprehensive plan adopted and in the proceedings followed, and that the distribution of assets provided for in the plan was unfair, for which the transformation should be annulled. If the plan adopted contained provisions which appeared unfair, that was a defect in the plan itself, subject to correction by the department of trade and commerce, and the law in question may not be declared void on account of an inequitable plan being adopted under it. With reference to some of the irregularities, had the questions been raised at the time, either before the department, or by an appeal from the department to the courts, amendments might have been required and the defects remedied, or the proceedings defeated.

It is evident that, in making up the schedule of assets included in the comprehensive plan, the company omitted therefrom certain items which appeared in the annual report of December 31, 1921, as rejected assets, consisting of agents' debit balances, $33,036.76; furniture and fixtures, $12,378.57; supplies, $4,500; rejected notes, $4,243.94; automobile account, $2,226.32. The assets shown in the comprehensive plan were itemized and disclosed no items of the character omitted. The plan recites that the statement of assets included were the assets of the company at the close of business on December 31, 1921. The report of that date was a matter of record. The report discloses these same items as "assets not admitted" and they were there deducted from the gross assets. The notice which the appellee admits he received contained a copy of the statements of assets embodied in the comprehensive plan; he could then have protected himself if he had thought there were other items of value omitted. The evidence discloses that the items omitted were all nonadmitted assets and practically valueless; the agents' debit balances were never collected; the supplies were supplies for the mutual company, and of no value for distribution or use by the stock company; and the furniture and fixtures were needed for use in order to continue business. While the

items omitted might better have been included in the schedule; yet there appears no attempt to conceal the fact that they were omitted. The department of trade and commerce had knowledge of the omitted items by the report of December 31, 1921. If there was an error in the excluding of these items from the schedule of assets in the comprehensive plan, both the company and the department were mistaken. A mistake or omission of this character in the transformation proceedings ought not to be construed as constructive fraud, nor be permitted to vitiate the completed transformation of the company.

The reason for placing the selling price of the capital stock at $125 a share, which is also complained of; was explained in both the comprehensive plan and the notice. By said section 7828, it is provided that members may subscribe for stock at par; but it is also provided by section 7822, Comp. St. 1922, that such stock company should have a surplus equal to one-fourth of its capital stock. The insurance department had held that a compliance with that provision was necessary before a certificate would issue authorizing a stock company to commence business. The fixing of the price of stock at $125 was, as explained to the members, the method adopted to provide for the capital and surplus. Though it may not have been the most appropriate course to pursue to accomplish the desired result, it was clear what the intention and desire was, and the method adopted met with the approval of the department of trade and commerce, and it was not shown that there was any objection thereto prior to the commencement of this proceeding. At most, this was a mere irregularity; the parties appear to have acted in good faith, without fraud, either actual or constructive.

By the comprehensive plan of transformation the non-participating members and participating members were given equal rights to purchase stock, after such of the participating members as wished to do so converted their share of the surplus into stock, and it is now urged that this was erroneous; that the rights of the participating

members in this particular were superior to the rights of the nonparticipating members. What was previously stated herein bearing upon the rights of participating and nonparticipating members in considering the constitutionality of the law in question might be considered as disposing of this assignment; but, in addition, the appellee was a participating member, and the notice he received advised him fully of the facts of which he now complains. He read the notice, and until the commencement of these proceedings made no complaint that he was not given all the rights his classification entitled him to.

Complaint is further made that the department of trade and commerce failed to make an order for the distribution of the existing and future surplus of the company. Subdivisions 1, 2, and 3, of said section 7828, relate to the changing of method of doing business by a company operating upon a mutual or assessment plan, and set forth the duties of the department of trade and commerce with reference thereto, which includes the making of an equitable order for the distribution of existing and future surplus, with the provision that a copy thereof should be sent to the stockholders with the notice of the meeting. Subdivision 4 of that section provides that, if such company desires to change to a stock company, it shall, in addition to the requirements of the first three subdivisions, also comply with the fourth subdivision; it does not make any similar requirement of the department of trade and commerce, but sets out a new line of duties to be performed by the department in case of such a change, and this does not include the making of any order for distribution of existing or future surplus, although it does require that an order of approval of the plan be made.

With reference to the notice provided for by the fourth subdivision, it requires that notice of the time and place of the meeting and approval of the department shall be sent members, but no mention is made of including a copy of the order of distribution of any surplus, as is required when the proceedings are had under subdivisions 1, 2, and

3. In the instant case such an order appears not to have been required.

Criticism is made of certain transactions of the former officers, and proceedings had in connection with the management of the company before the transformation proceedings were instituted, and also with the management of the company subsequent to the transformation becoming effective, but in no manner connected with such proceedings. While the matters referred to might be the subject of attention by the insurance department, they would not affect the validity of the proceedings involved in this action.

It is also urged that the company prior to the transformation was on a sound basis and that there was no necessity for a change. The motive for the change does not appear to be material under the law; that the company shall "desire" to make the change is sufficient. While the motive might be considered in determining the good faith of the transaction, the trial court found there was no intentional fraud, and with that finding this court is satisfied.

It is further urged that the proxies of members used at the election were not legal. Appellee Leininger contends that his proxy was given only for ordinary business. He had warning of the construction that was being placed upon the proxies signed, which was included in the application, by the officers of the company, as the notice he received provided: "At this meeting you may be represented in person or by proxy. If you have not already given a proxy in your policy or application you should sign the inclosed blank policy and write in the name of the officer or any other person you wish to represent you and send it to him at once." He did not appear and did not object to using the proxy he had given. Both the law and the articles of incorporation provided that proxies could be used. The vote of members present and represented was unanimous. The vote of appellee and other dissatisfied members testifying could not have changed the result. In the absence of evidence regarding other proxies given by the membership sufficient to have changed the result, the court will

not assume that those proxies were given for a special purpose, or that the signers did not intend them to be used at an election of the character in question. The great majority of the members whose votes were so cast have not attempted to repudiate their proxies. The burden of proof rested upon the appellee to show that a sufficient number of the proxies so used were void, to have changed the results.

It will be noted that these proceedings were not instituted for about four years after the transformation had been entirely completed. On the transformation, Leininger, the appellee, became entitled to a share of the surplus which he received and accepted; he paid premiums and dealt with the company as a stock company from that time until about the time of the commencement of these proceedings; he received and read the notice advising what was being done, and knew that the remainder of the surplus not distributed to him was paid to other participating stockholders. He knew that the company commenced and was continuing to operate as a stock company after the time of the transformation; that stock in said company was being purchased and surplus created.. The company in the meantime has extended its business to new states, written new risks to the extent of several million dollars; collected large amounts of premiums on new business written for persons who must have presumed they were dealing with a stock company, and paid losses occurring; hence, the transformation should not be set aside unless reasons therefor are imperative. Where the parties, as in this case, were apparently acting in good faith in attempting to perfect such a transformation, mere irregularities in the proceedings or errors due to a misconstruction of the law as to duties of the officers of the company or public officers ought not to be permitted to vitiate the completed transformation. The complainant had an appellate remedy, but it was not pursued. The evidence discloses no excuse for failure to appeal. There appears to have been a general acquiescence in the transformation proceedings. The doctrine of estop-

pel should prevail in this case.  *Frohnen v. Sanitary Sewer.
District, ante,* p. 84; *Clark v. Cambridge & Arapahoe Irri-
gation & Improvement Co.,* 45 Neb. 798; *Enterprise
Irrigation District v. Tri-State Land Co.,* 92 Neb. 121; *Ben-
nett v. Baum,* 90 Neb. 320; *St. John v. Iowa Business Men's
Building & Loan Ass'n,* 136 Ia. 448; *In re Mutual Benefit
Co.,* 190 Pa. St. 355.

As against the application of the doctrine of estoppel. it
is urged that the appellee had no notice that his rights
would be affected until the year 1925, when he made in-
quiry regarding the amount of surplus provisionally ascer-
tained and held awaiting distribution at the expiration of
the deferred dividend period.  Some misunderstanding arose
as to the information desired, and appellee urges that this
was the first information he had that he was being de-
frauded.  At that time there was nothing due appellee from
the company in the way of surplus.  At the proper time he
may be entitled to an accounting; but so far he has sus-
tained no injuries; his wrongs are anticipatory.  As stated
in *Iversen v. Minnesota Mutual Life Ins. Co.,* 137 Fed. 268:
"It would be remarkable if the complainant were ·entitled
to have this association wound up and its purposes defeated
by reason, not of injuries suffered, but of injuries antic-
ipated."

By the information furnished with the notice. appellee
was advised of every fact, or was furnished information
through which, if followed up, or if he had made a reason-
able inquiry, he would have learned all of the facts bearing
upon the transformation that he had at the time of the
commencement of this proceeding.  Under such circum-
stances he is estopped by laches from complaining at
this time.  *Talich v. Marvel, ante,* p. 255.

It is suggested that the time allowed for taking an appeal
by appellee. after he received notice of the order of the de-
partment of trade and commerce, was not sufficient in
which to perfect an appeal.  Had appellee actually made
an effort to perfect an appeal and failed on account of some
reason other than his own fault or neglect, and had then

promptly instituted this proceeding, his position would have been more tenable.

Under the circumstances disclosed by the record in this case, it would be contrary to the plainest principles of equity. if appellee might stand by and accept his share of the surplus, deal with and recognize the company as a stock company, with full knowledge of its extending its business into new territory and writing insurance as a stock company; permit it to collect premiums on new risks and pay claims to the extent that it has for a period of about four years, without objection or assertion of the claims he now makes, which if successful, would be manifestly unjust, not only to the stockholders, but to the new policyholders whose rights and interests would be seriously interfered with. Although the stockholders and new policyholders are not parties to this suit, their interests will not be overlooked. As said by Judge Wade in a case involving a similar question:

"We are dealing with conditions. The change has been made. It is now more than a year since the change to a capital stock company was effected. This case has been pending about seven months. I must assume that all the members of the association have long ago had full knowledge of what was done, * * * that many of the members have had knowledge of the pendency of this proceeding; but at no time up to the present has there been any suggestion brought to the notice of the court that any other member, except the plaintiff, is dissatisfied with what was done. * * *

"This court of equity cannot shut its eyes to the interests of some 25,000 members, all of whom are free agents, and none of whom are seeking relief; nor can the court be oblivious to the fact that, by granting the relief asked by the plaintiff. it would be almost certain that the association would ultimately reach insolvency and dissolution. * * * This court cannot consider the equities of the plaintiff alone; it must consider the equities of all persons interested in the result of this suit. Plaintiff is interested only to the

extent of his insurance under his $2,000 policy, and to the extent of his equity in the existing funds of the association. Whatever damage he has sustained can be recovered by him in an action at law." *Shera v. Merchants Life Ins. Co.*, 237 Fed. 484. See, also, *Freemeyer v. Industrial Mutual Indemnity Co.*, 101 Ark. 61, and *Equitable Life Assurance Society v. Brown*, 213 U. S. 25.

All possible rights and interests of the appellee herein appear to be fully protected by the reservations in the transformation proceedings, and by the transformation law that "such change shall in no way impair any pending action or right previously acquired, or annul or change any existing contract of such company." Comp. St. 1922, sec. 7828.

Upon a complete examination of the record, the conclusion is that the findings and judgment should be in favor of the North American National Insurance Company, intervener, and against John P. Leininger, applicant. The decree of the district court is therefore reversed, the application of John P. Leininger dismissed at his costs, and the ruling of the department of trade and commerce and of the bureau of insurance sustained.

REVERSED, AND PROCEEDING DISMISSED.